## In re JOHN G. HAGAN, Petitioner.

### In Banc, November 23, 1922.

1. **HABEAS CORPUS: Constitutional Prerogative: Restricted by Legislature.** By the express words of the Constitution (Sec. 3, Art. VI) the Supreme Court is given power to issue writs of *habeas corpus* and to hear and determine the same, and no legislative act can curtail, restrict or take away this power.

2. ———: ———: ———: **Motion to Quash.** A motion to quash a writ of *habeas corpus* theretofore issued by the Supreme Court, on the ground that under the statutes the court is without jurisdiction of the subject-matter, is novel, in view of the express words of the Constitution investing the Supreme Court with power to issue and to hear and determine such writs; and while there is a very old statute (Sec. 1944, R. S. 1919) which seemingly undertakes to restrict the original jurisdiction of the court in such matters, in so far as it undertakes to do so it violates the broad and unrestricted jurisdiction granted to the court; and, while in a case or two it was conceded, without discussion, that this statute would be enforced, in recent years the unrestricted right of the court to exercise its jurisdiction has been recognized.

3. **FUGITIVE FROM JUSTICE: Extradition: Federal Statutes: Construction.** In matters of extradition of a fugitive from one state to another charged with having committed a crime, the Federal statutes are controlling, and the construction placed upon them by the Federal courts is likewise controlling.

4. ———: ———: ———: **Rendition Warrant: Necessary Showing.** Section 5278 of the Revised Statutes of the United States, pertaining to fugitives from one state to another, requires (a) that the executive of the demanding state show that the alleged fugitive is in fact a fugitive from justice and (b) produce "a copy of an indictment found or an affidavit made before a magistrate"; and unless the one or the other of these two instruments is produced, the executive of the surrendering state is without authority to issue a rendition warrant.

5. ———: ———: ———: ———: **Affirmative Recitals.** The rendition warrant issued by the Governor for the arrest and surrender of a person alleged to be a fugitive from the justice of another state must affirmatively recite that a copy of an indictment found

or an affidavit made before a magistrate was produced, and if it fails to show on its face the one or the other it fails to show authority for its issuance. This is the construction placed by the Federal courts upon Section 5278 of the Revised Statutes of the United States.

6. ———: ———: ———: Recitals: Authenticated Complaint. A rendition warrant issued by the Governor which recites that the governor of the demanding state "has produced to me a copy of a complaint warrant in said State certified to be authentic," but which nowhere recites that the Governor had before him a copy either of an indictment or of an affidavit made before a magistrate charging the alleged fugitive with a crime against the laws of said demanding state, does not meet the requirements of the Federal statute, and does not authorize the arrest of said alleged fugitive. The Federal statute makes no reference to a "complaint warrant," and "a copy of a complaint warrant . . . certified to be authentic" is not a copy of an indictment or an affidavit before a magistrate. The statute requires that before the Governor can issue a rendition warrant either "a copy of an indictment found or an affidavit made before a magistrate" of the demanding state and "charging the person demanded with having committed treason, felony or other crime, certified as authentic by the governor" of the demanding state, shall be produced, and the rendition warrant must recite on its face that a copy either of an indictment found or an affidavit made before a magistrate, certified as authentic, was produced before the Governor, and unless it does contain such recitals a person arrested in pursuance to it may be discharged on *habeas corpus.*

## *Habeas Corpus.*

PETITIONER DISCHARGED.

*Chas. M. Howell, Walter K. Chorn, R. F. Gilkeson, Jos. S. Brooks, Daniel V. Howell* and *C. P. LeMire* for petitioner.

(1) The warrant of rendition is void upon its face, because it does not recite that there has been presented to the Governor an indictment or affidavit charging a crime against the laws of Kansas, but recites that a "complaint warrant" has been presented, and because

the warrant does not recite that your petitioner is a fugitive from justice. Section 5278, Revised Statutes of United States; Ex parte Harte, 63 Fed. 249, 29 L. R. A. 810; In re Doo Woon, 18 Fed. 898-9; In re Jackson, 2 Flippin, 183; Ex parte Burford, 3 Cranch, 448; 2 Moore on Extradition, p. 108, par. 622; Kentucky v. Dennison, 24 How. 66; State v. Swope, 72 Mo. 402. (2) There was no prima-facie showing that the petitioner was a fugitive from the State of Kansas, Therefore the Governor was without jurisdiction to issue the warrant of rendition. Ex parte Reggels, 114 U. S. 642; Opie v. Weinbrenner, 285 Mo. 365; In re Jackson, 2 Flippin, 183; Ex parte Burford, 3 Cranch, 448; 2 Moore on Extradition, p. 108, par. 622; Ex parte Harte, 63 Fed. 249; In re Doo Woon, 18 Fed. 898.

*J. G. Brady, E. E. Enright* and *Cameron L. Orr* in opposition.

The writ should not be granted unless the action of the executive department plainly contravenes the law. Compton v. Alabama, 214 U. S. 1, 53 L. Ed. 885; 1 Bailey on Habeas Corpus, pp. 563, 568, 570; Ex parte Sheldon, 34 Ohio St. 319; Ex parte Watson, 2 Cal. 52. (2) It was necessary that there be presented to the Governor either an indictment found by a grand jury or some other instrument by which a prosecution was instituted sworn to before a magistrate, charging petitioner with the commission of a crime. There was attached to the application for a requisition in the instant case a document denominated, according to the laws of Kansas, a complaint, which was positively sworn to and was the "affidavit charging crime" upon which this prosecution was started. This complaint is the "affidavit" contemplated by the Federal statute. 1 Bailey on Habeas Corpus, p. 561; In re Greenough, 31 Vt. 279; In re Strauss, 197 U. S. 324, 49 L. Ed. 774; Ex parte Reggel, 114 U. S. 642, 29 L. Ed. 250; In re Keller, 36 Fed. 681; Gen. Stats. Kan.,

secs. 7910 to 7915, 7944, 7953, 7957, 7958, 7961, 7963, 7964. This complaint or affidavit charged a crime under said laws of Kansas, and on its face complies with the laws of the demanding state.

GRAVES, J.—Upon proper application of John G. Hagan, a writ of *habeas corpus* was duly issued by this court on October 10, 1922, returnable on October 16, 1922. Such writ was directed to Jack B. Jenkins, Agent of the State of Kansas; Frank Anderson, Chief of Police of Kansas City, Missouri; Isaac Walston, Chief of Detectives of Kansas City, Missouri, and John L. Miles, Marshal of Jackson County, Missouri. Jenkins and Miles waived service of the writ, and the others were duly served. Hagan, in writing, waived the production of his body before our court at any and all times pending the proceeding here. Upon the day fixed (October 16, 1922) all parties to whom the writ was directed made their returns, and the cause was then continued for hearing upon October 28, 1922, at which time it was heard in open court. Anderson and Walston, by their returns, stated that they had not arrested Hagan, and Hagan was not, and had never been, in their custody. Miles, the Marshal of Jackson County, admits that he did have and detain the said Hagan until he was released upon a bond fixed and approved by this court; that he had not turned over the said Hagan to Jenkins, agent for the State of Kansas, because of the issuance of our writ and the fixing of the bond aforesaid; that he arrested and held the said Hagan under the following executive writ from the Governor of Missouri:

"To the Sheriff or Marshal of any County or City in this State.

"Whereas, the Governor of the State of Kansas has demanded of the Governor of this State, John G. Hagan, fugitive from justice from said State; and whereas, the Governor of the State of Kansas has produced to me a copy of a complaint warrant in said State certified to be

authentic, charging said fugitive with having committed the crime of robbery.

"Now therefore, I, Arthur M. Hyde, Governor of the State of Missouri, do hereby command you to arrest the said John G. Hagan anywhere within the limits of this State, and him secure and deliver to Jack B. Jenkins, who is the agent of said State of Kansas duly authorized to receive the said fugitive.

"And I do hereby command all sheriffs, marshals, constables and police officers to whom this warrant may be shown to aid and assist in the execution of this process. And you will make due return to me on this warrant of your proceeding thereunder.

"In testimony whereof, I hereunto set my hand and cause to be affixed the Great seal of the State of Missouri.

"Done at the City of Jefferson, this 4th day of October in the year of our Lord one thousand nine hundred and twenty-two.

"(Seal)                          "ARTHUR M. HYDE,
                    "CHARLES U. BECKER,
                          "Secretary of State."

We have set the foregoing writ out in full, because upon it is centered the fire of counsel for petitioner. The return of Jenkins accords with that of Miles, so far as this writ is concerned and the custody and actual restraint of petitioner. This return pleads the divers instruments filed with the Governor of Missouri upon the hearing of the writ, the details of which can be noted so far as necessary. To the returns of Miles and Jenkins, petitioner replied, setting up many matters, including the alleged defect of the writ. These can be noted in the course of the opinion. In the hearing the proceedings before the Governor were to be considered in evidence, as well as the Kansas laws and the Kansas court rulings thereon. There was, just prior to the hearing, a motion filed to quash our writ of *habeas corpus*, for reasons thus stated in the motion;

"Come now the respondents herein and move the court to quash the writ of *habeas corpus* heretofore issued by this court, for the reason that on the face of the petition herein and under the statutes of the State of Missouri in such cases, this court is without jurisdiction of the subject-matter of this cause.

"Wherefore respondent prays that the court dismiss these proceedings."

Without formal ruling such motion was taken with the case. The several points made and the facts thereon can best be taken with the opinion, so that, with this general outline, we leave to the opinion the development of material facts.

I. We have first a motion to quash our writ. Of recent years this motion is novel, to say the least. It has, however, foundation both in statute and decisions. Singular as it may seem, plain constitutional provisions are sometimes overlooked by the courts. In the grant of power to this court the Constitution (Sec. 3, Art. VI.) says: "The Supreme Court shall have a general superintending control over all inferior courts. It shall have power to issue writs of *habeas corpus,* mandamus, *quo warranto, certiorari* and other original remedial writs, and to hear and determine the same."

This constitutional power to issue the writ is absolute. It is a grant of original and concurrent jurisdiction. There is no qualification or restriction in the organic law. Without a restriction in the organic law, the Legislature is without power to limit our jurisdiction. Our jurisdiction is one of a broad and unrestricted constitutional grant and a legislative restriction would be violative of this grant.

We must concede that Section 1944, Revised Statutes 1919 (a statute upon the books for years) seemingly undertakes to restrict the original jurisdiction of this court, as such is given by the Constitution. This statute reads:

"When a person applies for the benefit of this article, who is held in custody on a charge of crime or misdemeanor, his application, in the first instance, shall be to the judge of the circuit court for the county in which the applicant is held in custody, if, at the time of the application, such judge be in the county, except that in the city of St. Louis the application, in the first instance, shall be made to the judge of the criminal court for said city, if he, at the time of the application, shall be in said city; and upon every application of the kind aforesaid, the applicant shall cause reasonable notice of the time and place of making the application to be given to the circuit or prosecuting attorney for the county in which the application is to be made, if at the time thereof such attorney be in the county, and upon such notice, it shall be the duty of such attorney to attend upon the hearing of such application on behalf of the State."

Without discussion, this statute, as a restriction upon the prerogatives of this court, has been enforced in certain cases. [Ex parte Gaume, 162 Mo. 390; Ex parte Shoffner, 173 Mo. App. 403.] The Gaume Case from this court has never been cited since, except in 173 Mo. App. supra, and in State v. Buckner, 234 S. W. 1. c. 652, so far as we find. In the latter, with nothing but a limited approval. It is true that the statute and the Gaume Case, supra, sustain the contention of the respondents in this case. The Gaume Case, from its face, shows that the real question was not raised or considered. In the early case of Ex parte Bethurum, 66 Mo. 1. c. 553, the unrestricted right of this court to issue the writ is recognized, and the right of the law-makers to destroy this right is also denied.

Out of comity from one department of government to the other, reasonable regulations of practice may be prescribed. [Ex parte Bethurum, 66 Mo. 1. c. 553.] Yet the destruction of a constitutional power conferred upon this court, by legislative act, will never be recognized. [In re Albert Webers, 275 Mo. 677; State v. Buckner, 234

S. W. l. c. 652.] The constitutional power of the three departments of the State Government will be and should be preserved. When the Constitution grants to this court an unrestricted right to grant writs of *habeas corpus* (as it does) no Legislature has the right or power to diminish this constitutional power. The Constitution (Sec. 3, Art. 6) grants to this court, as a part of its original jurisdiction, the right to "issue writs of *habeas corpus*," and no legislative act can curtail or restrict that power. The power to issue includes the power to hear and finally determine, irrespective of legislative interference. In the matter of contempt we have never gone further than to rule that as a matter of comity between the separate departments of the State Government, we would recognize reasonable restrictions imposed by the Legislature. We have never ruled that we had to recognize such legislative restrictions. [Dissenting opinion of LAMM, J., in Railroad v. Gildersleeve, 219 Mo. 170; approved by the court in Ex parte Creasy, 243 Mo. l. c. 708.]

Under the Constitution, this court is given the right to grant writs of *habeas corpus*. No legislative act can take away or curtail this constitutional grant. It would be useless for the people (in the Constitution) to grant this court a right, if the Legislature could later destroy the right. What is granted by the Constitution cannot be curtailed or destroyed by legislative act.

It should be said that Section 1944, Revised Statutes 1919, really contemplates that if the circuit judge is in the county, application should not be made for the writ to an inferior court, rather than to the circuit judge. This on the theory that it would be a reasonable regulation to require application to a superior court rather than an inferior court if a judge of the superior court was at hand. This principle is far different from that of cutting down an original and concurrent jurisdiction in a superior court. Of recent years we have recognized the unrestricted right of this court, in the exercise of its constitutional right to issue and hear these writs.

II.   At least one of the vital questions in this case is the warrant of rendition.   This is the warrant by which the governor of the surrendering state commits the prisoner to the demanding state or its agent.   In the instant case the validity of this warrant is challenged, because the recitations of the warrant do not bespeak power to act by the executive issuing it.   The point made is, that the recitations of the rendition warrant, must show facts which authorized its issuance.   This is vehemently urged upon the part of petitioner, and not so well covered by counsel for the State of Kansas.   We have set out this warrant in full, so that all its recitations may appear.   In cases of this kind it must be conceded that the Federal General Statutes (Secs. 5278 and 5279) with the constructions placed thereupon by Federal courts must control.   This much was recognized by this court in Ex parte Opel v. Weinbrenner, 285 Mo. 1. c. 376.   The Opel Case, whilst it recognizes the doctrine, does not reach the question, we have at the very door-way of this case.   This Opel Case and all of our cases recognizes (1) that in extradition between the states the Federal statute is controlling, and (2) that the Federal construction of such statute is controlling.   It could not well be otherwise, without the Federal statute there would be no extradition between states, nor could there be harmony of law.   So the courts generally recognize the Federal statutes, and the Federal construction of those statutes as controlling.   The Federal statutes, Sections 5278 and 5279, Revised Statutes of United States 1878, read:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate

*Rendition Warrant.* (margin note)

of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand, shall be paid by such State or Territory.

"Any agent so appointed who receives the fugitive into his custody, shall be empowered to transport him to the State or Territory from which he has fled. And every person who, by force, sets at liberty or rescues the fugitive from such agent while so transporting him, shall be fined not more than five hundred dollars or imprisoned not more than one year."

The first section, supra, clearly indicates (1) that the person must be a fugitive from justice, and (2) that the demanding executive must show (a) that this alleged fugitive is in fact a fugitive from justice, and (b) such demanding executive must produce and file "a copy of an indictment found, or an affidavit made before a magistrate." The demanding state must produce one or the other of these two instruments, and without the one or the other the surrendering executive is without authority to issue a rendition warrant. We hardly think that the foregoing is disputed in this case. It would be useless to dispute it under the case law. The real question under this paragraph of the present opinion, is, whether or not the rendition warrant, issued by the surrendering state, through its governor, must affirmatively recite these things. The governor of a state is not a judicial officer, or a court of general jurisdiction, and even if he acts in a judicial capacity in the exercise of some of his executive

functions, his records must bespeak his authority to act. I do not understand that the State of Kansas denies this position. That State contends that the whole record before the Governor of Missouri authorized his warrant. On the other hand, petitioner, through learned counsel, contend that when a surrendering governor issues a rendition warrant, such warrant, like a carrier pigeon, must carry the necessary luggage to justify the flight. If such warrant upon its face does not show authority for its issuance, then it may be questioned under a writ of *habeas corpus* at any point.

In addition, the character of the rendition warrant must be judged by the Federal construction of the Federal statutes. If the foregoing be the law, then the rendition warrant in this case is void, and we need not go further, or discuss other vital questions raised. The validity of the rendition warrant we shall discuss more in detail. It is an important matter, and should not be left with the simple statement of its invalidity. Of the reasons for this statement, as to its invalidity, we speak later.

III. In 2 Moore on Extradition, p. 1008, sec. 622, it is said: "The warrant of rendition must show that the requirements of the law have been fulfilled. These in general are: (1) That the person charged has been demanded as a fugitive from justice by the executive of the state from which he fled; (2) that the requisition was accompanied with a copy of an indictment, or an affidavit made before a magistrate; (3) that the copy of the indictment or the affidavit was duly certified as authentic."

*Rendition Warrant: Necessary Recitals.*

This doctrine goes to what must appear upon the face of the warrant of rendition. What must appear before the governor, before he could rightfully issue a warrant of rendition is another and different subject.

The Federal statute requires what must appear before the governor issuing the rendition warrant, but in express language it does not say just what must appear

upon the face of the rendition warrant, if issued. This warrant is the nature of a judgment from one of limited judicial powers. Such bodies or persons must at least make their jurisdiction, and power to act, to appear from their record. This is the universal rule in Missouri. But of the Missouri rule in this regard, we have but little concern. The question before us is the Federal construction of the Federal statutes. Mr. Moore, quoted supra, has summarized fairly the rule. We are cited by learned counsel upon the other side to 1 Bailey on *Habeas Corpus,* pp. 559, 563, 568, 570. None of these pages controvert the general rule announced by Moore, supra. They deal with different questions. That we may not drift windward, let us reiterate the question which we are now considering. That question is whether or not the rendition warrant, upon its face, must disclose jurisdictional matters. Things jurisdictional are those prescribed by the Federal statute, supra. If a governor cannot issue a rendition warrant without reciting these things, then the question of his power at once becomes an issue. Now to the warrant before us. In no place is it recited that the Governor of Missouri (the rendition governor) had before him either an indictment or an affidavit made before a magistrate, charging petitioner with a crime against the laws of Kansas. This warrant of rendition will be read in vain for such a recitation of facts. It is doubtful as to whether or not it recites that petitioner is a "fugitive from justice" from Kansas, one of the necessary facts. Certain it is that this rendition warrant does not state that the Governor of Missouri had before him either an indictment or an affidavit made before a magistrate, charging petitioner with a crime.

The language of the rendition warrant recites that the demanding governor filed with the surrendering governor "a copy of a complaint warrant" which complaint warrant, is "certified to be authentic." Any kind of an instrument might be authentic, and be so certified. In this kind of a case, under the Federal statute, only two

kinds of authentic instruments have any bearing whatever. To authorize a warrant of rendition the demanding state must present to the surrendering state, either an authentic indictment or an authentic affidavit made before a magistrate, charging the alleged fugitive with a crime in the demanding state. The language of the Federal statute, which we have quoted in full, makes no reference to "a complaint warrant." It certainly is neither "an indictment" as the courts understand the term, nor, "an affidavit before a magistrate" as the term affidavit is understood. So that if this rendition warrant must carry upon its face evidence of the authority for its issuance, such evidence does not appear by a recitation of the facts.

In this State in contempt proceedings, this court has ruled strictly upon the contents of a committing warrant. [Ex parte Creasy, 243 Mo. 1. c. 702 et seq. and cases therein cited.] We were dealing with statutory provisions as to contempt, it is true, but so are we dealing with statutory requisites in this case. In both cases human liberty is involved. The strictness of the law is no greater in the one than in the other of the two classes of cases. Human liberty is involved in each, and for the security of liberty, *habeas corpus,* the great writ of right, was instituted and planted in the law. The purpose and unlimited character of the writ is eloquently expressed by LAMM, J., in the case of In re Clark, 208 Mo. 1. c. 142. It is enlightening upon warrants of commitment, and a rendition warrant is one placing the custody of the alleged criminal into the hands of an officer, who restrains him of his liberty, as perfectly as if he were in jail. [21 Cyc. p. 289.] But this may be somewhat adrift, because in this case we are dealing with Federal statutes, and must give such statutes the construction placed upon them by the Federal courts.

Returning to the first vital question, i. e. must the rendition warrant, upon its face, show facts that warranted its issuance under the Federal statutes, in question here, as they have been construed. We are compelled

to answer this question in the affirmative. The cases vibrate somewhat, but the general rule is clear enough. Compton v. Alabama, 214 U. S. 1, rules that the governor of the surrendering or asylum state, in interstate extradition under the Federal statute, has no right to issue a rendition warrant without having before him either an "indictment" or "an .affidavit before a magistrate" charging a crime.

In the early case of Ex parte Burford, 3 Cranch, 447, MARSHALL, Chief Justice, in speaking of a commitment warrant, said: "The question is, what authority has the goaler to detain him? To ascertain this we must look to the warrant of commitment *only*. *It is that only which can justify his detention.* That warrant states no offense."

Another case in point is that' of In re Doo Woon, from the U. S. District Court of Oregon, 18 Fed. 899, whereat it is said: "The Executive of this State in allowing the requisition of the Executive of California, acts under the authority of the United States statute, and must conform to its directions and limitations. [Kentucky v. Dennison, 24 How. 66.] One of these is that before he can allow a warrant of extradition he must be furnished with a copy of an indictment or affidavit charging the person demanded with the commission of a crime against the laws of California. Without this he has no jurisdiction. A case for the exercise of his authority, in this respect, is not presented, and so far does not exist. And *the warrant must bear upon its face the* evidence that it was duly issued, and therefore, unless it recites or sets forth the indictment or affidavit upon which it is founded, it is illegal and void."

So too, in the case of In re Jackson, 2 Flippin, l. c. 187, by a United States Circuit Court, it is said: "But it is manifest if the warrant fails to recite or state any conclusion of the executive issuing it, that the person charged has fled, and recites only that the demanding governor has so represented, that the warrant is not legally suffi-

cient to authorize an arrest and extradition. It is a common principle that a process of arrest must be legally sufficient on its face. We are called upon to say whether the warrant extradition is prima-facie sufficient under the Constitution and laws of Congress, and we are of opinion that it is not.''

In the case before us the rendition warrant not only fails to show that the Governor of Missouri had before him ''an indictment'' or ''an affidavit made before some magistrate'' but it affirmatively declares what the Governor did have before him, a writing called ''a complaint warrant.'' He had neither of the instruments mentioned in the Federal Statutes, and without an ''indictment'' or ''an affidavit before some magistrate,'' the Governor of Missouri was powerless to act. [Compton v. Alabama, 214 U. S. 1, supra.] In other words the language of the rendition warrant invalidates the warrant.

Reverting to the rule of law as to what must appear upon the face of the rendition warrant in order to justify the detention, we find the rule much discussed by annotators and text-writers. These practically all agree to the rule announced by Moore quoted supra. And this too, with both Federal and State cases before them, and under consideration. Thus in 25 Corpus Juris, at page 268, it is said:

''The warrant of the executive who surrenders a fugitive must show that the requirements of the laws have been complied with, namely, that the accused had been demanded by the executive of the state from which he fled, as a fugitive from justice; that such a demand was supported by a copy of an indictment found or an affidavit made before a magistrate, charging the fugitive with having committed a crime; and that such copy of indictment or affidavit was certified by the executive of the demanding state to be duly authenticated, but there is no requirement of any particular form or language and the warrant will not be invalid because it has technical

295 Mo.—29

faults which do not materially affect its clearness or purport, although in an early case a warrant was held void because the seal was unintelligible. The governor has no right to insert any other name in his warrant than that designated in the requisition.''

Singular to say that the early case referred to above was Vallad v. St. Louis County Sheriff, 2 Mo. 26.

The learned annotator of the American State Reports in volume 112, at page 140, thus expresses his conclusions as to the rule, after a review of many Federal cases, and some state cases:

''The warrant of extradition must bear on its face the evidence that it was duly issued, and should set forth or recite the indictment or affidavit upon which it is founded.  [In re Doo Woon, 9 Saw. 417, 18 Fed. 898.] It is not necessary that copies of the indictment, affidavit or other records be annexed to it.  It is sufficient if the jurisdictional facts are recited on its face.  [State v. Richardson, 34 Minn. 115, 24 N. W. 354.]  It is not necessary that the warrant contain an express recital that the governor found that the accused was a fugitive from justice.  The issuance of the warrant upon the demand made upon that ground is sufficient to justify the presumption that the governor so found, until that presumption is overthrown by proof to the contrary. [Ex parte Dennison, 101 N. W. (Neb.) 1045.]  The warrant need not contain a formal statement of all the facts upon which it issues. [State v. Clough, 71 N. H. 594, 53 Atl. 1086, 67 L. R. A. 946.]''

In Ex parte Dawson, 83 Fed. 306, 28 C. C. A. 354, the Circuit Court of Appeals said:

''While it is not necessary to the sufficiency of an extradition warrant, when attacked on *habeas corpus,* that it shall set out in full a copy of the indictment or affidavit upon which it is based, or that it be accompanied by such affidavit or indictment, yet a warrant for the arrest and return of the fugitive criminal must recite or set forth, in substance, the evidence necessary to author-

In re Hagan.

ize the state executive to issue it; and where the requisition, and the copy of the indictment accompanying it, are made a part of the return, and the warrant alone, as in this case, is before the court, it must show (1) that a demand by requisition has been made for the party in custody, as a fugitive from justice; (2) that the requisition was accompanied by a copy of an indictment or affidavit charging the commission of an offense; (3) that the copy of such indictment or affidavit was certified by the governor of the state making the demand as authentic.''

A more concise and short statement of the rule is found in 11 Ruling Case Law, at page 747, thus:

''If a case is shown to be within the provisions of the Federal Constitution and the act of Congress on the subject, the governor of a state has no discretion, but must issue his warrant of extradition. The warrant must bear on its face the evidence that it was duly issued, and should set forth or recite the indictment or affidavit on which it is founded. It need not contain a formal statement of all the facts on which it issues, it being sufficient if the jurisdictional facts are recited on its face.''

Earlier in point of time the learned annotator of Lawyers' Reports Annotated, in volume 1, at page 371, uses this language:

''The proceeding must be such as is usual in similar charges against residents, and the warrant, indictment, and demand must specify the nature of the crime charged. [Ex parte Cubreth, 49 Cal. 436; Ex parte Pfitzer, 28 Ind. 450; People v. Brady, 56 N. Y. 182; Com. v. Deacon, 10 Serg. & R. 125.] The warrant must bear upon its face the evidence that it was duly issued; and therefore, unless it recites or sets forth the indictment or affidavit upon which it is founded, it is illegal and void. [Ex parte Smith, 3 McLean, 121; Ex parte Thornton, 9 Tex. 635; Re Doo Woon, 18 Fed. Rep. 899.] The chief executive of a state cannot issue a warrant of extradition for the arrest of a fugitive from justice on the ground of public

policy.   His only power to extradite a person from his
state must be found in the Constitution and laws of the
United States.   [Ex parte Morgan, 20 Fed. 298.]   The
governor of a state, in issuing a warrant for the arrest of
a fugitive from justice, the officer who makes the arrest,
and the party commissioned to receive the fugitive and
deliver him to the authorities of the state in which the of-
fense is charged to have been committed, act under the
authority of the laws of the United States, and *pro hac
vice* are officers or agents of the United States. [Re Robb,
19 Fed. 26.]''

From them all it appears that where one is com-
mitted to jail or to restraint of his person, the warrant
committing him, must upon its face give evidence of a
legal right to hold.' Absent recitals in the warrant, show-
ing a legal right to hold a citizen in restraint of his liber-
ties, such citizen is entitled to discharge upon writ of
*habeas corpus.*  In this particular case the rendition war-
rant is required to recite such facts as will show that the
governor had the right to issue the warrant.   Absent
such recitals the warrant is void, and extraneous facts
cannot cure the defects.  As said by Chief Justice MAR-
SHALL, when the jailer claims the right to restrain a
sovereign citizen, he must justify the restraint by the
warrant of commitment and the warrant alone.   Meas-
ured by the rules of law the rendition warrant in this
case is void.  If the warrant is void the petitioner is en-
titled to his discharge, and it is so ordered.  Other in-
teresting matters need not be discussed.

The petitioner is discharged.  All concur except
*Woodson, C. J.,* not sitting; *Elder, J.,* concurs in the
result.