(No. 20171.—

TONY LACONDRA, Appellant, *vs.* OTTO H. HERMANN, Sheriff, Appellee.

*Opinion filed April 23, 1931.*

W. C. Burton, A. R. Miller, and Charles A. Karch, (James K. Moran, of counsel,) for appellant.

Alvin C. Bohm, State's Attorney, and M. L. Welch, for appellee.

Mr. Justice Duncan delivered the opinion of the court:

Tony Lacondra, appellant, was arrested and imprisoned in the county jail of Madison county by appellee, Otto Hermann, sheriff of said county, under a warrant issued by the Governor of this State on the requisition of the Governor of the State of Michigan. Appellant filed in the circuit court of Madison county an affidavit and petition for a writ of *habeas corpus* under the provisions of section 2 of "An act to revise the law in relation to fugitives from justice," approved February 16, 1874, as amended in 1925, (Laws of 1925, p. 414,) and again amended in 1929. (Laws of 1929, p. 487; Cahill's Stat. 1929, p. 1401; Smith's Stat. 1929, p. 1557.) The writ was issued and appellee made his return thereto. After hearing, the court quashed the writ and ordered that appellant be remanded to and remain in the custody of appellee. From this judgment appellant prosecuted this appeal.

In the affidavit and petition for writ of *habeas corpus* appellant sets forth and claims that the requisition of the Governor of Michigan and the accompanying papers, and the warrant of the Governor of this State, are not in regular and legal form; that he is not substantially charged

with a crime against the laws of the State of Michigan; that he is not a fugitive from the justice of the State of Michigan—*i. e.,* that he was not present in the State of Michigan on or about the date the offenses with which he is charged were alleged to have been committed, and that the requisition is not made in good faith but for some ulterior purpose other than the punishment of crime.

The return of appellee to the writ of *habeas corpus* states that he holds appellant in custody "under an extradition, and warrant and papers attached thereto, issued by the Governor of Michigan and honored and granted by Hon. L. L. Emmerson, Governor of the State of Illinois, copy of which is annexed hereto." Accompanying the return are copies of the following papers: (1) Application of the prosecuting attorney of Wayne county, Michigan, to the Governor of that State for a requisition upon the Governor of this State for the rendition of appellant; (2) warrant issued by a judge of the recorder's court of the city of Detroit on complaint of Ralph Paul for the arrest of appellant for the crimes of statutory rape upon and taking indecent liberties with Lucille Paul, a female under sixteen years of age; (3) complaint of Ralph Paul, subscribed and sworn to before a judge of the recorder's court of the city of Detroit, that appellant committed the above named offenses on Lucille Paul on October 12, 1929; (4) warrant issued for the arrest of appellant for the offenses above mentioned, the warrant being substantially the same as the one above described in number 2; (5) affidavit of Ralph Paul, subscribed and sworn to before a judge of the recorder's court for the city of Detroit, that he is the father of Lucille Paul and the father-in-law of appellant, who married affiant's daughter Eleanor Paul; that Lucille Paul is under sixteen years of age, having been born on June 5, 1916, and that appellant is twenty-one years of age and is the same person who attacked Lucille Paul on October 12, 1929; (6) affidavit of Lucille Paul, subscribed and sworn

to before a judge of the recorder's court of the city of Detroit, that she is of the age of thirteen years, and that on October 12, 1929, appellant assaulted her and had sexual intercourse with her; (7) certificate of the clerk of the city of Detroit that the person before whom the complaint and affidavits above mentioned were made and who issued the warrants above mentioned is a judge of the recorder's court of the city of Detroit and a magistrate in and for the county of Wayne and State of Michigan; (8) verification of his application for requisition by the prosecuting attorney of Wayne county, Michigan; (9) certificate of the clerk of the circuit court of Wayne county, Michigan, that the person making the application for requisition is the prosecuting attorney for said county and State; (10) commission of the Governor of Michigan to Hugo Quinn to take and receive appellant from the officers in this State and convey him to Michigan; (11) warrant issued by the Governor of this State for the arrest of appellant.

Interstate extradition is based upon the provisions of section 2 of article 4 of the constitution of the United States that a "person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall, on demand of the executive authority of the State from which he fled, be delivered up, to be removed to the State having jurisdiction of the crime," and the enactment of Congress (10 U. S. Comp. Stat. 1916, sec. 10126; U. S. Rev. Stat. sec. 5278;) providing that whenever "the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall

be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear."

The first contention made by appellant is that the requisition papers are insufficient, in that it does not appear that the copies of the complaint and affidavits charging appellant with the offenses are certified as authentic by the Governor of Michigan. It will be noted that there was attached to the return of the sheriff no copy of the requisition or demand of the Governor of Michigan on the Governor of this State for the apprehension of appellant and no copy of a certificate of the Governor of Michigan that the complaint and affidavits charging appellant with crime are authentic. The authority of the Governor of the State of refuge of a person charged with a crime in another State to issue his warrant for the arrest of such person is derived from the enactment of Congress above quoted, and unless it appears to him, by a copy of an indictment found or an affidavit made before a magistrate and certified by the Governor of the demanding State to be authentic, that the fugitive is substantially charged with a crime in the demanding State, then he has no authority to issue a warrant for the arrest of the fugitive. *Roberts* v. *Reilly,* 116 U. S. 80, 6 Sup. Ct. 291 ; 25 Corpus Juris, 264.

The copy of the warrant issued by the Governor of this State attached to the return of appellee contains the following recitals: "The Governor of the State of Michigan demands of me the arrest and delivery of Tony Lacondra as a fugitive from justice, and has produced and laid before me a copy of a complaint and warrant, certified as authentic by the said Governor and duly authenticated, and charging the said Tony Lacondra with having committed, on the

12th day of October, A. D. 1929, in the county of Wayne, in the said State of Michigan, the crime of statutory rape and indecent liberties, which the said Governor certified to be a crime under the laws of said State, and being satisfied that the said Tony Lacondra, fugitive from justice, has fled from the said State of Michigan and has taken refuge in this State," etc. It is to be noted that the recitals of this warrant show that there was a requisition or demand upon the Governor of this State by the Governor of Michigan for the arrest of appellant and that the complaint and warrant accompanying the requisition were certified by the Governor of Michigan as authentic. There is no showing in this case that these recitals are not true, and in the absence of such showing they must be deemed to state the truth. (*Ex parte Dawson*, 83 Fed. 306.) Appellant does not dispute this proposition but takes the position that the recitals of the warrant are insufficient, in that they do not show that the Governor had before him a copy of an indictment or an affidavit made before a magistrate of the State of Michigan charging appellant with crime. The warrant in this respect is of itself insufficient, because it must appear to the Governor, to give him authority to issue his warrant, that the fugitive is charged with crime in the demanding State by an indictment or affidavit made before a magistrate. (*Ex parte Hagan*, 295 Mo. 435, 245 S. W. 336; *State* v. *Curtiss*, 111 Minn. 240, 126 N. W. 719.) In this case, however, the return of the sheriff is not supported by the warrant issued by the Governor of this State, alone. There accompanies the return also a copy of the complaint and warrant which the Governor of this State had before him at the time he issued his warrant. It appears that this complaint is in the form of an affidavit subscribed and sworn to by Ralph Paul before a judge of the recorder's court of the city of Detroit who is shown to be a magistrate in and for the county of Wayne and the State of Michigan. A copy of the complaint shows that it is an affidavit

executed before a magistrate of the State of Michigan, and the recital of the warrant of the Governor of this State shows that the copy of such complaint he had before him was certified by the Governor of the State of Michigan to be authentic. While the warrant of the Governor of this State, had it alone accompanied the return of the sheriff, would be insufficient to show that the detention of appellant by appellee was legal, and while the papers, other than the warrant issued by the Governor of this State, if considered without such warrant, would be insufficient to show that the arrest and detention of appellant are legal, yet when the warrant of the Governor of this State, and the papers which accompany the return, are considered together, it does appear that the issuance of the warrant of the Governor of this State was legal and justified. (*State* v. *Curliss, supra.*) The contention of appellant that he is entitled to be discharged because the requisition and papers accompanying it, and the warrant of the Governor of this State, are not in due and legal form must therefore be overruled.

To support his contention that he was not a fugitive from the justice of the State of Michigan appellant introduced on the hearing in the circuit court his own testimony and the evidence of other witnesses that he was not in the State of Michigan on or about the 12th day of October, 1929. That he had the right to make such showing is well established. (*Illinois* v. *Pease,* 207 U. S. 100, 28 Sup. Ct. 58.) According to appellant's testimony he first went to Detroit in September, 1928, and remained there until September 15, 1929, when he returned to Collinsville, Illinois, where his father lived, and stayed there until the following October 25, when he again went to Detroit, where he stayed until some time in November, when he came back to Collinsville. Appellant's father testified that appellant was at his home in Collinsville from September 15 to October 25, 1929. Tony Copecchi testified that he came to Collinsville from Detroit with appellant about September 15, 1929, and

returned to Detroit with appellant and his wife on October 25, 1929; that between September 15 and October 25, 1929, he saw appellant in Collinsville "about once or twice a week" and talked to him on the telephone "about every other day." Amelia Durcomoto, appellant's sister, who lived in East St. Louis, testified that appellant lived at his father's home at Collinsville between September 15 and October 25, 1929; that during that period he came to see her "about twice a week," and that she talked to him on the telephone frequently. Virginia Barsis, at whose house in East St. Louis Amelia Durcomoto and her husband lived, testified that appellant came to see his sister at witness' house some time in September, 1929, and thereafter "about twice every week" until after the middle of October, and that she heard the sister talking to appellant on the telephone frequently during September and October. Patsy Pugloise, who drives a delivery wagon for a grocery store, testified that he saw appellant at his father's home three or four times each week between September 17 and the latter part of October, 1929. Another witness, who worked for appellant's father, testified that appellant was in Collinsville from the middle of September to the latter part of October, 1929. Because of his difficulty in understanding and speaking the English language this witness' testimony is confused and of little value. Appellant on cross-examination said that he was not working at Turnstead's machine shop, in Detroit, on October 12, 1929, and denied the making of a statement to officer Quinn at the county jail that he was working there at that time. He also denied telling officer Quinn that he had trouble with the little girl, Lucille Paul, and that that was the reason he left Detroit and came back to Collinsville.

Hugo Quinn, the person appointed by the Governor of Michigan to receive the fugitive from the officers of this State, testified in rebuttal that the first time he had seen Tony Lacondra was in the Madison county jail on Janu-

ary 29, 1930; that he had a conversation with Lacondra there at the jail on that day in which he stated that he was in Detroit in the month of October, 1929, and on the 12th day of that month; that he lived with the Pauls and worked at Turnstead's shop; that his wife is a sister of Lucille Paul and that he knew Lucille Paul and last saw her "about three weeks ago." Witness further stated that Lacondra told him that he thought the charge against him was a "frame-up" and that it was all settled, and that his father had gone up to Detroit and "settled things up." Lacondra did not take the witness stand after officer Quinn had testified or make further denials of Quinn's testimony.

The extradition warrant and requisition papers, including the various affidavits therein set forth, made a *prima facie* case that appellant was a fugitive from justice, and it was incumbent on him to overcome that *prima facie* case by competent proof. (*Illinois* v. *Pease, supra.*) The trial court, after seeing and hearing the witnesses testify, found that the testimony on behalf of appellant was not sufficient to overcome the testimony on behalf of appellee given by officer Quinn and the affidavits in the requisition papers, which the court was warranted in considering as proper testimony for the purpose of the hearing before the court. This court would not be warranted in disturbing that finding unless we could say that it was clearly or manifestly erroneous. This we cannot do. It will be noted that in the cross-examination of appellant he did not specifically deny that he was in Detroit on October 12, 1929, which was the very point in question. His specific denial was that he was not working at Turnstead's machine shop in Detroit on October 12, 1929. That answer might have been true literally, but it is not equivalent to a specific denial that he had stated to officer Quinn that he was in Detroit on that date. No one knew better than appellant where he was on that date. Officer Quinn in his examination in rebuttal specifically stated that appellant told him in the jail that he was

in Detroit on the 12th day of October. Appellant's testimony to the effect that he did not tell officer Quinn that he had trouble with the little girl, Lucille Paul, and that that was the reason he left Detroit, should not be considered as proper evidence in this case. The real question of alibi and whether or not appellant was guilty of the offenses charged against him in the State of Michigan are only proper questions for the court and jury in Michigan to settle in case he should be tried for such offenses in Michigan. *Munsey* v. *Clough,* 49 U. S. (L. ed.) 515, 25 Sup. Ct. 282; *People* v. *Traeger,* 340 Ill. 147.

The contention is made that the requisition is not made in good faith but from some ulterior motive other than the punishment of crime. It is urged that this is shown by the fact that complaint was not made until January 15, 1930, whereas the offense is alleged to have been committed on October 12, 1929, and by the testimony of appellant's father that he went to Detroit and saw the father of Lucille Paul after appellant had been arrested, and that the girl's father told him he would go to court and have the charge dismissed if he would pay him $150 for the expense he had incurred, and that he paid the $150 and took a receipt therefor. This showing fails to establish that there was any bad faith or ulterior motive, or any motive other than the punishment of crime, actuating the officers of Michigan in making the request on the Governor of this State for appellant's arrest and extradition. The father of Lucille Paul in accepting the $150 and agreeing to have the suit against appellant dismissed was merely guilty of compounding a felony—an offense which at common law was punishable by fine and imprisonment, and the party compounding a felony was at common law regarded as an accessory to the crime compounded. The right to prosecute the appellant in this case is in the public authorities of Michigan, who also have the right to control the suit. The father had no such right. There is no significance in the fact that it appears that there

618

was no complaint filed by the father or other person until January 15, 1930. The family of the girl upon whom the offenses were committed in this case may not have found out that the offenses were committed until a very short time before the complaints were filed, as the girl was only thirteen years of age and the offenses were of a character that she would naturally be inclined to conceal from her parents.

The evidence in this record shows that appellant was not entitled to his discharge, and the court rightfully so held and remanded him to the custody of the sheriff, to be by him delivered to the agent of the State of Michigan.

The judgment of the circuit court of Madison county is therefore affirmed.

*Judgment affirmed.*