(No. 35085.—

**THE PEOPLE ex rel. Raymond Everett Hackler, Appellant, vs. JOSEPH D. LOHMAN, Sheriff, Appellee.**

*Opinion filed May 22, 1959—Rehearing denied September 22, 1959.*

KOVEN, KOVEN, SALZAN & HOMER, and PAPANEK & SCHILLER, both of Chicago, (PAUL HOMER, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH and WILLIAM H. SOUTH, Assistant Attorneys General, and FRANCIS X. RILEY and EDWARD J. HLADIS, Assistant State's Attorneys, of counsel,) for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from an order of the criminal court of Cook County quashing a writ of *habeas corpus* and remanding Raymond Everett Hackler, relator, to the custody of the defendant, Joseph D. Lohman, for extradition to the State of North Carolina. The writ was issued on relator's petition after his arrest upon a rendition warrant issued by the Governor of Illinois at the request of the Governor of North Carolina.

Relator contends that the warrant on its face is legally insufficient and void; that its deficiencies cannot be cured by extrinsic evidence; that the court erred in denying his application for discharge made during the hearing; and that the evidence established that he served his full sentences for the crimes of which he was convicted in the

demanding State, rendering extradition for those offenses illegal. Jurisdiction to consider this appeal is conferred upon us by statute. Ill. Rev. Stat. 1957, chap. 60, par. 27.

The sheriff's return to the writ of *habeas corpus* alleged that relator was in his custody by authority of the rendition warrant issued by the Governor of Illinois on requisition of the Governor of North Carolina; that all papers were legal; that relator was a fugitive from justice charged with offenses against the laws of the State of North Carolina and was the person named in the extradition papers and Governor's warrant. No papers or documents accompanied the return. At the hearing the defendant introduced only the rendition warrant. Relator then moved for a discharge on the ground that the warrant was void on its face. After argument by counsel in support of the motion, the trial judge stated that he did not believe the case should be decided on a technicality, and counsel expressed a desire to offer evidence. The court indicated approval and stated that it did not wish to rule on the case piecemeal.

The relator then testified that he was the person named in the Governor's warrant; that he had lived in Chicago two years; that he was convicted in the State of North Carolina on the charges named in the warrant and was sentenced to imprisonment, but had served his full sentences; that he was a "Class B" prisoner and was familiar with the prison rules in North Carolina concerning "good time" while serving a sentence; that his time would have been up in December of 1955; and that he had never been advised of any change in his status from "Class B" to "Class A" or "Class C."

After relator had testified, his counsel introduced, without objection, copies of certain documents which had been filed by the North Carolina authorities in support of the extradition proceedings. These included the request of its Governor for the return of relator as a fugitive and the sworn statement of the director of prisons that relator

had been convicted of certain crimes and sentenced to imprisonment; and that he had escaped while serving the sentences. Copies of the commitments were also offered in evidence.

These papers, certified as authentic by the Governor of North Carolina, showed that relator was convicted in the municipal court of High Point, on June 27, 1955, of reckless driving, drunk driving and driving with no operator's license and sentenced to nine months imprisonment; that on July 7, 1955, he was convicted in the county court of Rowan County, of the crime of false pretense and sentenced to jail for eighteen months, the prior sentence being adjusted to run concurrently with this sentence; that on Juy 8, 1955, he was also convicted of larceny by trickery in the county court of Davidson County upon which he was sentenced to twelve months confinement to begin at the expiration of the latter sentence; that on March 12, 1956, while serving these sentences, he escaped from Cabarrus County prison camp, at Mt. Pleasant; and that his extradition and return is requested for the purpose of completing the sentences. The affidavit of the director of prisons was sworn to before a magistrate and the usual certificate of magistracy was attached. After considering this evidence, the criminal court quashed the writ.

The relator takes the position that the trial court could not properly consider the contents of the supporting papers in determining the legality of his arrest and detention, but must decide the case by reference to the provisions of the rendition warrant alone; and that since the latter document failed to comply with sections 3 and 7 of the Uniform Criminal Extradition Act, (Ill. Rev. Stat. 1957, chap. 60, pars. 20 and 24,) it was void and the relator was entitled to discharge.

The rendition warrant issued by the Governor of Illinois, after reciting the request by the Governor of North Carolina that Hackler be returned as a fugitive, stated that

there had been produced and laid before him "a copy of an commitment, warrant certified as authentic by the said Governor" charging Hackler with having committed in the State of North Carolina the crimes of "reckless driving, no operator's license, drunk driving and no operator's license" which are certified to be crimes under the laws of that State; and that he is satisfied that Hackler is a fugitive from justice, has fled from the State of North Carolina and has taken refuge in this State. The warrant then commands the arrest, the production of the fugitive in court and his delivery to the agent of the demanding State unless discharged.

Section 3 prescribes the form and contents of the demand for extradition and specifies that the documents which shall accompany it shall be "a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the Executive Authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole."

Section 7 sets forth the form and contents of the Governor's warrant in these words: "If the Governor decides that the demand should be complied with, he shall sign a warrant of arrest, which shall be sealed with the state seal, and be directed to any peace officer or other person who he may think fit to entrust with the execution thereof. The warrant must substantially recite the facts necessary to the validity of its issuance."

This poses the question of whether a rendition warrant reciting that it is based upon the production of a "commitment, warrant" meets these statutory requirements. How-

ever, before resolving this question, it is proper that we recur to the fundamental principles of the law of extradition.

The rights and basic procedures of interstate extradition of fugitives are created and controlled by the Federal constitution and effectuating statutes. (U. S. Const., art. IV, sec. 2; U. S. Rev. Stat., sec. 5278, Title 18 USCA par. 3182; *United States ex rel. McCline* v. *Meyering,* (7th cir.) 75 F.2d 716; *People ex rel. Millet* v. *Babb,* 1 Ill.2d 191; *People ex rel. Guidotti* v. *Bell,* 372 Ill. 572.) Section 2 of article IV of the United States constitution recites the rights and duties of the demanding and asylum States: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

Congress implemented this constitutional mandate by section 5278 which provides: "Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or. the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. * * *" U. S. Rev. Stat., sec. 5278, Title 18 USCA par. 3182.

We have said that this act establishes "a complete, expeditious and summary procedure for returning a fugitive from the asylum to the demanding State, for the guidance of and binding upon all the courts of the land," (*People ex rel. Millet* v. *Babb,* 1 Ill.2d 191, 195,) rather than a judicial proceeding to inquire into the merits of the charges; and that the statute should be accorded a liberal construction to accomplish the return of the fugitive summarily. *Biddinger* v. *Commissioner of Police,* 245 U.S. 128, 62 L. ed. 193.

Since the only purpose of extradition is the return of the fugitive to the place of the alleged offense, his constitutional rights, other than the present right to personal liberty, are not involved. Courts generally recognize the right of the accused to a writ of *habeas corpus* to determine if he is substantially charged with a crime and is actually a fugitive from the demanding State. (*People ex rel. Millet* v. *Babb,* 1 Ill.2d 191.) But the scope of the inquiry is limited to those considerations. *People ex rel. Goldstein* v. *Babb,* 4 Ill.2d 483; *People ex rel. Gilbert* v. *Babb,* 415 Ill. 349.

While it is generally recognized that States may enact legislation ancillary to and in aid of this provision of the United States constitution and its supplementary Federal legislation, it is also well settled that such enactments must not be inconsistent with the constitutional purpose or restrict the summary exercise of the authority of the executive. (*Biddinger* v. *Commissioner of Police,* 245 U.S. 128, 62 L. ed. 193; *United States ex rel. McCline* v. *Meyering,* 75 Fed.2d 716; *People ex rel Millet* v. *Babb,* 1 Ill.2d 191; 22 Am. Jur., par. 9, pages 249, 250.) State legislation in conflict with the intent and meaning of the Federal constitutional provision is void. (*People ex rel. Carr* v. *Murray,* 357 Ill. 326.) "Every State's right to punish its offenders must be assured and such offenders should not be accorded protective asylum by another State. Federal,

rather than State control, is essential to avoid a diversity of requirements and procedures." *People ex rel. Millet* v. *Babb,* 1 Ill.2d 191, 196.

These salutary principles are expressly recognized in the language of section 2 of the Uniform Criminal Extradition Act which provides: "Subject to the provisions of this Act, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this State to have arrested and delivered up to the Executive Authority of any other state of the United States any person charged in that State with treason, felony, or other crime, who has fled from justice and is found in this State." (Ill. Rev. Stat. 1957, chap. 60, par. 19.) It is apparent, therefore, that the General Assembly intended that the procedures and requirements of the uniform act be consistent with the Federal constitution and its supplementary Federal legislation.

In considering the relator's contention that the Governor's warrant of rendition was void, we note that the Federal Extradition Act contains no specific provisions concerning the form or contents of such warrant. Nevertheless, because of its requirement that the demand be accompanied by "a copy of an indictment found or an affidavit made," (U.S. Rev. Stat. sec. 5278, Title 18 USCA par. 3182,) the warrant must show on its face that it was duly issued, and must show, among the other recited jurisdictional facts, that the requisition of the demanding State was accompanied by a copy of an indictment or affidavit charging the commission of an offense and that the copy of such indictment or affidavit was certified as authentic by the Governor of the demanding State. A majority of the decisions in both State and Federal courts support this rule. *Ex parte Dawson,* (8th cir.) 83 Fed. 306, cer. denied, 170 U.S. 705; *In re Doo Woon,* (Dist. Ore.) 18 Fed. 898; 22 Am. Jur., par. 51, pages 288, 289; 89 A.L.R. 597.

Thus, in *Ex parte Hagan,* 295 Mo. 435, 245 S.W. 336,

it was held that a rendition warrant which recited that it was issued pursuant to a "complaint warrant" failed to recite facts showing that the Governor had the right to issue the document and that without such a recital the warrant was void. To the same effect is *State ex rel. Sibley* v. *Hackett*, 161 Tenn. 602, 33 S.W.2d 422, where the rendition warrant recited that the relator stood charged in the demanding State "upon warrant."

The same rule applied in Illinois prior to the adoption of the Uniform Criminal Extradition Act. In *People ex rel. Poncher* v. *Toman*, 371 Ill. 275, we held that under section 2 of article IV of the United States constitution and supplementary Federal legislation, a Governor's warrant for the arrest of a fugitive must show that it was based upon an indictment or affidavit before a magistrate charging a crime in the demanding State; and that where the warrant recites only that "a copy of a complaint and warrant" was before the Governor and no documentary evidence was offered showing that there was an indictment or affidavit before a magistrate, the court could not presume the complaint referred to was an indictment or affidavit before a magistrate, and that the judgment remanding the prisoner must be reversed.

When *Poncher* was decided, our act contained no provisions as to the form of the Governor's warrant, except that it should be issued under the seal of the State. (Ill. Rev. Stat. 1953, chap. 60, par. 1.) The former act remained substantially unchanged until the adoption of the uniform act in 1955, and since then, this question has not been before us.

The provisions in the uniform act relative to the form and contents of the Governor's warrant are found in section 7 which sets forth that it "must substantially recite the facts necessary to the validity of its issuance." (Ill. Rev. Stat. 1957, chap. 60, par. 24.) This is a codification

of the former law that the warrant must recite all jurisdictional facts necessary to its validity.

Section 3 specifies, in the alternative, that (1) a copy of an indictment or an information supported by affidavit, (2) a copy of an affidavit made before a magistrate, together with a copy of any warrant which was issued thereupon, (3) a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding State that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole, must be laid before the Governor of the asylum State with the demand. (Ill. Rev. Stat. 1957, chap. 60, par. 20.) Except for the third statement, these requirements are essentially the same as those found in the Federal act. (U.S. Rev. Stat., sec. 5278, Title 18 USCA, par. 3182.) This specification appears to have been added to meet the case of the escaped convict, a situation not necessarily encompassed where the showing is to be made by indictment or affidavit.

We see no conflict between the provisions of section 3 and the Federal act, since courts have long held that an escaped convict is a fugitive from justice as well as an accused person and properly subject to extradition. (22 Am. Jur., par. 25, page 264; 78 A.L.R. 420.) The same rule applies to one who has violated the terms of his parole. (*Hughes* v. *Pfanz*, (6th cir.) 138 Fed. 980; *People ex rel. Westbrook* v. *O'Neill*, 378 Ill. 324; *People ex rel. Ross* v. *Becker*, 382 Ill. 404; 22 Am. Jur., par. 25, page 264; 78 A.L.R. 422.) Therefore, we conclude that the uniform act has not substantially changed the law relative to the jurisdictional facts which must be shown on the face of the Governor's warrant. It should recite, among other facts, substantial compliance with at least one of the documentary requirements specified in section 3.

In *Ex parte Haynes,* 98 Tex. Cr. Rep. 609, 267 S.W. 490, the warrant recited that the demand was accompanied by a copy of a "penitentiary commitment duly certified as authentic by the Governor of said state." The Texas Court of Criminal Appeals held that the warrant was legally sufficient to make out a *prima facie* case and stated: "It is conceived that the commitment upon which the governor of this state acted in issuing the warrant in question may have contained, in an authentic manner, all the requisites of the law to show that the relator was under conviction of an extraditable crime in the demanding state. Conceding that the nature of the 'commitment' was such as might have such effect, the presumption prevails in support of the warrant that it did so. If the 'commitment' filed by the Governor with the requisition was not in law sufficient to support the warrant, the burden under the law was on the relator to introduce the papers in evidence."

This result is inconsistent with our decision in *People ex rel. Poncher* v. *Toman,* 371 Ill. 275, in which we refused to presume that the complaint referred to was in fact an affidavit made before a magistrate. In view of the requirements of the statutes, State and Federal, and of the numerous decisions upon the question, we are persuaded that the words "commitment, warrant" as recited in the warrant in question render its validity at least doubtful and, without more appearing, we would hold the relator entitled to discharge.

The real issue in a *habeas corpus* proceeding is whether the prisoner is illegally restrained. In an extradition proceeding, the initial inquiry is whether the rendition warrant is *prima facie* sufficient to justify the detention. (*People ex rel. Poncher* v. *Toman,* 371 Ill. 275.) By the weight of authority, however, legal deficiencies in the rendition warrant may be cured, in *habeas corpus* proceedings for the discharge of the fugitive, by including with the return of the sheriff or producing at the hearing the papers on which the

warrant was issued which show on their face that they are in due legal form, and that the warrant was justified. 22 Am. Jur., par. 51, page 289; 89 A.L.R. 599.

Since *Lacondra* v. *Hermann,* 343 Ill. 608, we have been committed to this view. There, the rendition warrant recited as the basis for its issuance "a copy of a complaint and warrant" certified as authentic by the Governor of the demanding State. The return to the writ, however, incorporated the supporting papers which showed that the complaint referred to was in fact an affidavit made before a magistrate and thus afforded a proper basis for issuance of the warrant of rendition. We held that notwithstanding the deficiency in the warrant itself, relator was not entitled to discharge, so long as the papers, considered together, established that the warrant of the Governor of this State was legal and justified.

In *Harris* v. *State.* 257 Ala. 3, 60 So.2d 266, the Supreme Court of Alabama cited *Lacondra* and at page 269 stated: "Should we hold that the recitals in the rendition warrant are conclusive, then it should logically follow that, should the chief executive on all occasions employ the magic words 'indictment' or 'affidavit' or 'information,' the prisoner, in *habeas corpus* proceedings would be forever barred to test the sufficiency of the extradition papers as a basis for issuance of the executive warrant. Such, of course, is not the law and the prisoner is allowed to traverse such recitals. So viewed, we think as a corollary, as a matter of law and as a matter of common sense, the State should also be permitted to show such matters in aid of the warrant." *Harris* was decided with reference to provisions of a statute almost identical with the provisions of section 7 of our Uniform Criminal Extradition Act and the rendition warrant there involved recited an "accusation" rather than an indictment, affidavit or information.

An examination of the documentary exhibits which were filed with the request for extradition in this case shows

that the Governor was fully justified in issuing the rendition warrant. The affidavit of the director of prisons stated that relator was convicted of certain crimes in the State of North Carolina; that he was sentenced to imprisonment therefor; that while serving his sentences and before the terms had expired he unlawfully escaped from confinement and fled to this State. The affidavit was sworn to before a magistrate, as required. The facts established by these exhibits afforded a proper legal basis for extradition. *People ex rel. Bell v. Mulcahy,* 392 Ill. 290, 293.

In addition, the commitment papers show the conviction, judgment and sentence in each case, as well as a statement by the Governor of the demanding State that relator escaped from confinement while serving his sentences and before the terms had expired. All papers were authenticated by the Governor of North Carolina. There was substantial compliance with the provisions of section 3 of the Uniform Criminal Extradition Act. With this evidence before him, the trial judge could not properly discharge the relator.

We cannot agree with relator's contention that the trial judge was not entitled to consider the supporting papers in reaching a decision or that he was limited, because of the motion for a discharge, to a consideration of the rendition warrant alone. The relator urges that section 64(5) of the Civil Practice Act precluded the trial court from reserving a ruling on the motion. This section provides: "Upon the trial of a proceeding in equity and in cases at law tried without a jury defendant may, at the close of plaintiff's case, move for a finding, judgment or decree in his favor. In ruling on the motion the court shall weigh the evidence. If the ruling on the motion is favorable to the defendant, a judgment or decree dismissing the action shall be entered. If the ruling on the motion is adverse to the defendant he may proceed to adduce evidence in support of his defense, in which event the motion is waived." Ill. Rev. Stat. 1957, chap. 110, par. 64(5).

The record indicates that the trial court's refusal to sustain the motion for discharge was tantamount to a denial. If a more express ruling was desired, the relator had the right to request it. However, he failed to do so and proceeded with his proof. Thereupon, under the statute, he waived his right to stand upon his motion. It is evident from the record that relator desired to introduce the documentary exhibits for the purpose of supporting his testimony that he had served the full term of his sentences. But regardless of relator's purpose, these papers clearly demonstrated that he was a fugitive from justice substantially charged with a crime in the demanding State. Having voluntarily introduced this evidence, the relator was bound by both its favorable and unfavorable aspects.

However, he urges that the evidence shows that he served the sentences imposed upon him. But this contention is based solely on his testimony. There are sworn statements in the exhibits that he escaped from confinement on March 12, 1956, within the period of the nine-month sentence. Our determination of this point would require us to pass upon the laws pertaining to the operation of the North Carolina prison system and its regulations relating to allowance for "good time," commutation of sentence and the like. In an extradition proceeding, such matters are not within the province of our decision. *People ex rel. Westbrook* v. *O'Neill,* 378 Ill. 324.

In addition, relator's argument fails to consider the sentences of 12 and 18 months on the felony charges which were to run consecutively with the misdemeanor sentence. While the felony convictions and sentences were not mentioned in the Governor's warrant of rendition, they were set forth in the documentary exhibits and we may consider such facts.

The order of the criminal court remanding relator to the custody of the sheriff of Cook County is correct and will be affirmed.

*Order affirmed.*