**STATE, ex rel CUTSHAW, Plaintiff-Appellant, v. SMITH, Sheriff, Defendant-Appellee.**

**STATE, ex rel. HOKE, Plaintiff-Appellant, v. SMITH, Sheriff, Defendant-Appellee.**

Ohio Appeals, Second District. Montgomery County.

Nos. 2226, 2227. Decided April 16, 1953.

Alfred W. Rothenberg, Dayton, for plaintiff-appellant, William K. Cutshaw.

Curtner, Brenton & O'Hara, Mr. Lloyd H. O'Hara, of Counsel, Dayton, for plaintiff-appellant Donald Hoke.

Mathias H. Heck, Prosecuting Attorney, by Mr. Fred M. Kerr, 1st Asst. Prosecuting Attorney, Dayton, for defendant-appellee.

## OPINION

By MILLER, J.:

These are law appeals from the judgments of the Common Pleas Court dismissing the relators' petitions for writs of habeas corpus. These allege that the plaintiffs are unlawfully imprisoned by virtue of warrants signed by the Governor of the State of Ohio.

The record reveals that requisitions were issued to the Governor of Ohio by the Governor of the State of Georgia for the extradition of these petitioners who were charged with being fugitives from justice, alleging the crimes of burglary as appear by copies of the indictments duly authenticated and attached to the requisitions; that in response to said requisitions a writ was isssued by the Honorable Frank J. Lausche, Governor, commanding the Sheriff of Mongomery County to arrest each of the petitioners and comply with a certain stated procedure before delivering them into the custody of the authorities from the State of Georgia. The plaintiffs are now in the custody of the respondent, Sheriff of Montgomery County.

The first question presented is the sufficiency of the petition filed with the Governor of Georgia, it appearing that the same was not verified by affidavit. Such a verification is required under Ohio law by §109-23 GC, and it is agreed that Georgia has a similar statute. Does such an irregularity void the extradition issued by the Governor of Ohio? The extradition of fugitives from justice is controlled by the Constitution of the United States

and the enabling statutes passed by Congress. Section 2, Article IV of the Federal Constitution, in part. provides as follows:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

The Congress, upon the authority of Section 2, Article IV, passed Title 18, Section 662, U. S. Code, to provide the procedure for carrying into effect such constitutional provisions. Title 18, Section 662, U. S. Code reads as follows:

"Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state, or the territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the state or territory making such demand, shall be paid by such state or territory."

In addition to the Federal enactment thirty-one of the states have enacted a "Uniform Extradition Act" which is found in the §109-1 GC et seq. It will be noted that 109-2 GC recognizes that in case of a conflict with Ohio laws the Federal enactment shall control. This section provides:

"Subject to the provisions of this act, the provisions of the constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."

In Ex parte Sheldon, 34 Oh St 319, the Court held that when the Federal and state laws are not the same, the law of this state would have to give way. In examining the requirements set forth in Title 18, Section 662, U. S. Code, it appears that all essential elements have been set forth in the requisition issued by the Governor of Georgia, to wit:

(1) A demand is made for the petitioners who were charged with being fugitives from justice.

(2) Certified copies of the indictments are produced charging felonies.

(3) The same are certified as being authentic by the Governor of Georgia.

It therefore became the duty of the Governor of Ohio under the facts presented to honor the requisitions and cause the arrests to be made.

An additional question is presented in the case of William K. Cutshaw, it appearing that he was under indictment in this state on two felony char-

246

ges at the time of the filing of the requisition with the Governor It is urged that under §109-19 GC, the Governor had a discretion to exercise, either to surrender him to Georgia or hold him for trial in this state. The cited Code section provides:

"If a criminal prosecution has been instituted against such person under the laws of this state and is still pending the governor in his discretion either may surrender him on demand of the executive authority of another state or hold him until he has been tried and discharged or convicted and punished in this state."

We have no record of the proceedings before the Governor, hence the record is silent as to what knowledge he might have had concerning the indictment pending against the petitioner. In the absence of such showing clearly no duty could have been imposed upon him. The statute was not enacted for the benefit of the fugitive from justice but for the State of Ohio, and he should not be permitted to complain if the Governor had no such knowledge. Should the plaintiff be of opinion the Governor would have acted differently if he had had this information, he has had ample time to so inform him and the same still may be done. As long as the fugitive is in custody of the Ohio authorities the Governor may recall his warrant of arrest or issue another one as he deems proper Sec. 109-1 GC. Therefore if any error has been committed because of the failure to exercise discretion, and we find none has, the same could not be prejudicial.

Finding no error in the record, both judgments will be affirmed.

WISEMAN, PJ, and HORNBECK, J, concur.