THE PEOPLE *ex rel.* GREGORY DIMAS, Petitioner-Appellant, *v.* WAYNE SHIMP, Sheriff of Du Page County, *et al.*, Respondents-Appellees.

Second District   No. 78-527

Opinion filed April 15, 1980.

Robert A. Novell, of Serpico, Novelle, Dvorak and Navigato, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton, and William J. Scott, Attorney General, of Chicago (Phyllis J. Perko and Jan Tuckerman, both of State's Attorneys Appellate Service Commission, of counsel), for appellees.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

Petitioner, Gregory Dimas, brings this appeal from an order of the circuit court of Du Page County denying a writ of habeas corpus and ordering defendant extradited to the State of Nevada.

We affirm.

Petitioner was arrested by the respondent, sheriff of Du Page County, on February 7, 1978, upon a fugitive from justice warrant issued out of Du Page County. On February 8, 1978, petitioner appeared before a judge. Bail was set, and he was held in custody in lieu of bond; the case was continued to March 8, 1978, the maximum time allowed. On March 8, 1978, the State asked for additional time, and the matter was continued to April 7, 1978; bond was reduced to $10,000. On March 24, 1978, petitioner posted bail and was released. On April 7, 1978, the State moved to nolle pros, and the matter was dismissed. At this time, petitioner advised the court that he was a narcotic addict in need of treatment and had delayed seeking treatment pending the outcome of the extradition proceedings. He stated that he would voluntarily commit himself to a one-year treatment program for narcotic addicts at Tinley Park State Hospital. Petitioner subsequently voluntarily enrolled himself in a drug treatment program at the Tinley Park Drug Center after his release from the Du Page County jail.

The governor's warrant was issued on April 14, 1978, at the request and demand of the Governor of Nevada, which was made on April 7, 1978. On June 26, 1978, petitioner filed a petition for a writ of habeas corpus asking the court to quash the governor's warrant. The trial court denied the petition. Petitioner contends that his petition for writ of habeas corpus should have been granted and extradition denied because the documents presented to support the governor's warrant were defective in that they were not in compliance with sections 3 and 23 of the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1977, ch. 60, pars. 20, 40).

■■ At the outset it must be stated that proceedings for the interstate extradition of criminals are controlled by the Federal Constitution and Federal law. Section 2 of article IV of the Constitution of the United States provides, in part, that:

> "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime. (U.S. Const., art. IV, §2.)

The controlling Federal statute (18 U.S.C. §3182 (1976)) states, in relevant part, as follows:

> "Whenever the executive authority of any State * * * demands any person as a fugitive from justice, of the executive authority of

any State * * * to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State * * * charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor * * * of the State * * * from whence the person so charged has fled, the executive authority of the State * * * to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

The principle of Federal supremacy in this area was succinctly stated by the Illinois Supreme Court in *People ex rel. Hackler v. Lohman* (1959), 17 Ill. 2d 78, 84-85, *cert. denied* (1960), 361 U.S. 963, 4 L. Ed. 2d 544, 80 S. Ct. 591:

"While it is generally recognized that States may enact legislation ancillary to and in aid of this provision of the United States constitution and its supplementary Federal legislation, it is also well settled that such enactments must not be inconsistent with the constitutional purpose or restrict the summary exercise of the authority of the executive. (*Biddinger v. Commissioner of Police*, 245 U.S. 128, 62 L. Ed. 193; *United States ex rel. McCline v. Meyering*, 75 Fed. 2d 716; *People ex rel. Millet v. Babb*, 1 Ill. 2d 191; 22 Am. Jur., par. 9, pages 249, 250.) State legislation in conflict with the intent and meaning of the Federal constitutional provision is void. (*People ex rel. Carr v. Murray*, 357 Ill. 326.) 'Every State's right to punish its offenders must be assured and such offenders should not be accorded protective asylum by another State. Federal, rather than State control, is essential to avoid a diversity of requirements and procedures.' *People ex rel. Millet v. Babb*, 1 Ill. 2d 191, 196.

These salutary principles are expressly recognized in the language of section 2 of the Uniform Criminal Extradition Act which provides: 'Subject to the provisions of this Act, provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this State to have arrested and delivered up to the Executive Authority of any other state of the United States any person charged in that State with treason, felony, or other crime, who has fled from justice and is found in this State.' (Ill. Rev. Stat. 1957, chap. 60, par. 19.) It is apparent, therefore, that the General Assembly intended that the procedures and requirements of the

uniform act be consistent with the Federal constitution and its supplementary Federal legislation."

Since Federal legislation in the field is not comprehensive, States are free to establish ancillary proceedings consistent with the Federal scheme (*People ex rel. Holmes v. Babb* (1953), 414 Ill. 490, 493; *People ex rel. Millet v. Babb* (1953), 1 Ill. 2d 191, 196) or even to provide for the surrender of fugitives on terms less exacting that those imposed by Federal law (*State ex rel. Sieloff v. Golz* (1977), 80 Wis. 2d 225, 258 N.W. 2d 700; *Glover v. State* (1974), 257 Ark. 241, 515 S.W. 2d 641; *In re Austin* (1971), 186 Neb. 815, 186 N.W. 2d 723; *Grano v. State* (Del. 1969), 257 A. 2d 768; *In re Morgan* (1966), 244 Cal. App. 2d 903, 53 Cal. Rptr. 642). States, however, cannot impose more stringent standards or refuse a demand for extradition on the basis of requirements not articulated by Federal law. *Ex Parte Arrington* (Mo. 1954), 270 S.W. 2d 39; *State ex rel. Cutshaw v. Smith* (Ohio App. 1953), 127 N.E.2d 633; *Ex parte Riccardi* (1949), 68 Ariz. 180, 203 P. 2d 627; *In re Sanders* (1937), 24 Ohio App. 605, 31 N.E.2d 246; all of which hold various parts of the Uniform Criminal Extradition Act, which are not also requirements of Federal law, inapplicable in extradition proceedings.

Section 3 of the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1977, ch. 60, par. 20) provides as follows:

"No demand for the extradition of a person charged with crime in another state shall be recognized by the Governor unless in writing alleging, except in cases arising under Section 6, that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the Executive Authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the Executive Authority making the demand."

The Governor of Nevada's demand for extradition was in the form of a requisition issued upon the Governor of Illinois for the arrest and delivery of Gregory Dimas to an authorized agent of Nevada. The

requisition stated that Gregory Dimas had been charged with the crime of sale of a controlled substance, that the crime had been committed in the County of Clark, Nevada, and that he had fled from justice in Nevada and was believed to be in Illinois. In the requisition, the Governor of Nevada certified as authentic the annexed application for requisition and the supporting documents. The supporting documents included a copy of the indictment of Gregory Dimas for the sale of a controlled substance, a certified copy of the bench warrant and two affidavits of police officer M. Hawkins.

Petitioner contends that the bench warrant which accompanied the demand was not properly certified and that the two affidavits of police officer M. Hawkins were not sworn to before a magistrate.

The bench warrant was properly certified as authentic by the Governor of Nevada. Neither the Federal statute (18 U.S.C. §3182 (1976)) nor section 3 of the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1977, ch. 60, par. 20) imposes any requirement that the bench warrant must be certified.

In the present case, the demand for extradition was accompanied by a copy of the indictment found. In this case, under both Federal and Illinois law, the indictment was the only document which had to be certified as authentic by the Governor of the demanding State. (18 U.S.C. §3182 (1976); Ill. Rev. Stat. 1977, ch. 60, par. 20.) Here the Governor of Nevada certified that the indictment was authentic.

The contention of the petitioner that all affidavits must be made before a magistrate is in error. The Federal and State statutes referred to above require that the affidavit be made before a magistrate only where the demanding State has proceeded by virtue of an affidavit and a warrant issued thereon, rather than by means of an indictment or information. In Illinois such an affidavit is commonly referred to as a sworn complaint. The rationale for requiring that such an affidavit or complaint be taken before a magistrate is obvious. Without it, there would be no judicial determination that probable cause exists for the issuance of the arrest warrant. However, such is not required where an indictment has been returned, since the grand jury has already made the determination of probable cause. Also, in Illinois an information cannot be filed without a prior finding of probable cause by a judge. (Ill. Rev. Stat. 1977, ch. 38, par. 111—2(a).) The inclusion of an information in section 3 of the Illinois Criminal Extradition Act is a lessening of the requirements of the Federal statute, which refers only to an indictment found or an affidavit made before a magistrate.

None of the cases cited by petitioner (*People ex rel. Kubala v. Woods* (1972), 52 Ill. 2d 48; *People ex rel. Coats v. Sain* (1962), 24 Ill. 2d 248; *People ex rel. Gilarmini v. Elrod* (1978), 59 Ill. App. 3d 258) supports

his contention that all affidavits must be made before a magistrate. The foregoing cases held that when the rendition warrants are based upon affidavits, section 3 of the Uniform Criminal. Extradition Act (Ill. Rev. Stat. 1977, ch. 60, par. 20) and section 3182 of the Federal extradition statute (18 U.S.C. §3182 (1976)) require that the affidavits must be made before a magistrate and that affidavits made before a notary public are insufficient. No such requirement is imposed by either statute when a copy of an indictment is furnished. See *Ex parte Riccardi* (1949), 68 Ariz. 180, 203 P. 2d 627.

■ Further, petitioner contends that the application for requisition of the Nevada State's Attorney failed to comply with the provisions of the Uniform Criminal Extradition Act of Nevada (Nev. Rev. Stat. §179.223 (1973), which is substantively identical to Ill. Rev. Stat. 1977, ch. 60, par. 40). We have examined this contention and find that it does not have merit. We do not discuss this more fully for the reason that an application for requisition is a product of State law designed to provide an internal system for initiating extradition proceedings. To deny a demand for extradition on the basis of insufficiencies in the application for requisition would impose requirements not contemplated by section 3182 of the Federal extradition statute. See *State ex rel. Cutshaw v. Smith* (Ohio App. 1953), 127 N.E.2d 633.

■ The demand for extradition of the Governor of Nevada filed in this cause met the requirements of both section 3182 of the Federal statute (18 U.S.C. §3182 (1976)) and section 3 of the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1977, ch. 60, par. 20), to wit: (1) a demand was made for Gregory Dimas who was charged with being a fugitive from justice; (2) a certified copy of an indictment charging him with a felony was produced; (3) the same was certified as being authentic by the Governor of Nevada. See *State ex rel. Cutshaw v. Smith*, at 635.

We also determine that the court did not err in striking the evidence of the petitioner's illness, addiction, need for continued treatment, and incarceration for treatment at Tinley Park State Hospital or in preventing petitioner from introducing additional evidence on these issues; nor were any constitutional rights of the petitioner thereby violated.

■ The scope of inquiry in habeas corpus proceedings commenced to test the validity of extradition is generally limited to the following four areas:

> " '(1) whether the accused is the person named in the warrant;
> (2) whether he is substantially charged with a crime in the demanding State;
> (3) whether he is a fugitive from justice of the demanding State;
> (4) whether the papers are regular in form. (*People ex rel. Ponak v. Lohman*, 7 Ill., 2d 156.)' " (*People ex rel. Bowman v.*

*Woods* (1970), 46 Ill. 2d 572, 575, quoting *People ex rel. Levin v. Ogilvie* (1967), 36 Ill. 2d 566, 567; *Michigan v. Doran* (1978), 439 U.S. 282, 289, 58 L. Ed. 2d 521, 527, 99 S. Ct. 530, 535.)

Such limitation has been imposed because of the nature of extradition proceedings. Section 3182 of the Federal statute (18 U.S.C. §3182 (1976)) was enacted to carry out the mandate of section 2 of article IV of the Federal Constitution. Its purpose was to establish a complete, straightforward, and summary procedure for returning a fugitive to the demanding State (*People ex rel. Millet v. Babb* (1953), 1 Ill. 2d 191, 195) rather than a judicial proceeding to inquire into the merits of the charges (*People ex rel. Hackler v. Lohman* (1959), 17 Ill. 2d 78, 84, *cert. denied* (1960), 361 U.S. 963, 4 L. Ed. 2d 544, 80 S. Ct. 591).

■■ Furthermore, the Illinois Supreme Court stated in *People ex rel. Hackler v. Lohman*:

"Since the only purpose of extradition is the return of the fugitive to the place of the alleged offense, his constitutional rights, other than the present right to personal liberty, are not involved. Courts generally recognize the right of the accused to a writ of *habeas corpus* to determine if he is substantially charged with a crime and is actually a fugitive from the demanding State. (*People ex rel. Millet v. Babb*, 1 Ill. 2d 191.) But the scope of the inquiry is limited to those considerations. *People ex rel. Goldstein v. Babb*, 4 Ill. 2d 483; *People ex rel. Gilbert v. Babb*, 415 Ill. 349." (17 Ill. 2d 78, 84.)

Moreover, during habeas corpus proceedings initiated to test the validity of an extradition order, the judicial branch of government will not interfere with a governor's grant of extradition, unless that order is "so palpably and conclusively shown to be wrong as to warrant an inference of fraud or inadvertence." *People ex rel. Guidotti v. Bell* (1939), 372 Ill. 572, 577.

■■ Specifically, petitioner contends that because of Nevada's alleged dilatory tactics in failing to proceed promptly with rendition, petitioner, who was ill, a narcotic addict, and in need of hospitalization and treatment, had substantially altered his position in reliance on the dismissal of the earlier fugitive warrant and had committed himself to a rehabilitation and hospitalization drug abuse program at Tinley Park State Hospital. To compel him to forego treatment and leave the program, he further contends, would be cruel and unusual punishment and deprive him of the safeguards of due process.

The case relied upon by petitioner (*People ex rel. Bowman v. Woods* (1970), 46 Ill. 2d 572) in support of his position here is distinguishable from the situation before us. Although *People ex rel. Bowman v. Woods* did allow inquiry into the dilatory actions of the demanding State, that

case involved an unexplained delay of 13 years between the first and last extradition proceeding. There Alabama had twice refused to extradite defendant, and he had been imprisoned three times pending extradition. These extreme circumstances, the court held, required the application of the concept of fundamental fairness and a finding that Alabama had forfeited its right to extradite the defendant.

No such extreme circumstances are present in this case however. The time interval between petitioner's initial arrest and the filing of his petition for writ of habeas corpus was less than six months. In addition, at the time the initial proceedings were dismissed in April 1978, the defendant was aware that if he voluntarily undertook treatment for drug addiction at the Tinley Park State Hospital there was a likelihood that the extradition proceedings would be reinstated.

Also, it is well established that the petitioner may not raise, during the course of the extradition proceeding, the question of the good faith of Nevada in demanding rendition. As was stated by the court in *People ex rel. Lacanski v. Backes* (1960), 19 Ill. 2d 541, 545-46, "[q]uestions of good faith of the demanding State, or of the complaining witnesses in an extradition proceeding, cannot be inquired into by the courts of this State. Such questions are for the courts of the demanding State. [Citations.]"

The order of the trial court denying the petition for a writ of habeas corpus and ordering the petitioner, Gregory Dimas, extradited to the State of Nevada, County of Clark, is affirmed.

Affirmed.

SEIDENFELD, P. J., and WOODWARD, J., concur.