[Civ. No. 61486. Second Dist., Div. Five. Apr. 19, 1982.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
ROBERTO LOPEZ, Real Party in Interest.

■

■

**COUNSEL**

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Dirk L. Hudson, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Eduardo M. Guzman for Real Party in Interest.

**OPINION**

**STEPHENS, Acting P. J.**—On November 12, 1980, real party in interest, who was then in the custody of the Sheriff of Los Angeles County, filed a petition for writ of habeas corpus in respondent superior court seeking an order quashing a Florida demand and Governor's warrant of extradition.[1] On December 5, 1980, respondent ordered the warrant and demand quashed, after stating that Florida had failed to bring real party back to that state in a timely fashion. On January 21, 1981, the People filed a notice of appeal, pursuant to Penal Code section 1506. On February 3, 1981, however, they filed the within petition for writ of mandate, arguing that the slowness of the appellate process made appeal an inadequate remedy.

Because we found merit in the People's contention that the United States Constitution requires prompt return of a fugitive from justice (U.S. Const., art. IV, § 2, cl. 2; *Michigan v. Doran* (1978) 439 U.S.

---

[1]The within People's petition for writ of mandate alleges that the warrant sought to be quashed was a California Governor's warrant. We proceed on the assumption that it was. No copy of the warrant was presented to the respondent court, nor is it part of the record in this court.

■

282 [58 L.Ed.2d 521, 99 S.Ct. 530]; *Sweeney* v. *Woodall* (1952) 344 U.S. 86 [97 L.Ed. 114, 73 S.Ct. 139]), and because of real party's claim, apparently concurred in by respondent, that Florida had already delayed proceedings too long, we concluded that these proceedings should be adjudicated more quickly than was possible via appeal. We therefore issued an alternative writ of mandate.

The People argue that real party's petition for writ of habeas corpus being unverified and the official documents which he offered in support of it not being certified, the record which real party made in respondent court was inadequate to justify granting him relief. The People apparently did not raise this argument below, and since they offer no evidence that the copies of official documents are not authentic, we proceed to a consideration of whether respondent exceeded its jurisdiction based upon the allegations real party made in that court.

The factual setting is this: Real party was sentenced to a five-year prison term in Florida on June 11, 1973. On May 24, 1976, he escaped from the Florida prison. Some time later he came to California where he also committed a felony and was sentenced to state prison. On May 17, 1977, while real party was incarcerated at the California Institution for Men in Chino, the Florida Department of Offender Rehabilitation sent to Chino prison officials a "Fugitive Warrant For Escaped Prisoner" with a cover letter seeking real party's return to Florida for the purpose of his serving the remainder of his uncompleted sentence.[2]

Real party's petition for writ of habeas corpus alleges that on June 16, 1978, "California authorities sent to Florida an Inmates Notice of Imprisonment and Request for Disposition of Indictment, Information on [*sic*] Complaint." This apparently was the first response by real party or by California authorities to Florida's May 17, 1977, fugitive warrant.

The habeas corpus petition further alleges that the June 16, 1978, inmate's notice is attached to the petition as exhibit D, but such is not the case. It appears nowhere in the file. The next item in the file is a letter dated December 27, 1978, from a Betty L. King, identified as the correctional case records manager at Chino, addressed to The Honorable Richard S. Fuller, Judge of the Circuit and County Court, Miami,

---

[2]The cover letter specified that the fugitive warrant was not to interfere with local charges; but that when real party could be released, Florida would return him to the custody of the Department of Offender Rehabilitation.

Florida. The letter states, "On June 16, 1978, Mr. Lopez filed a demand for trial for escape in Case No. 038295. As Mr. Lopez has not been taken out to court in this matter I presume that this has resulted in the invalidation of the indictment. [¶] Would you please advise us as to the disposition in this matter, so we may clear our records."

In fact, at that time, there had been no new criminal charges filed as a result of real party's escape. As indicated, the fugitive warrant merely sought his return for purposes of completing his original sentence. Also, the number referenced in Ms. King's letter—038295—was shown on the Florida fugitive warrant as real party's prisoner number, not the number of his court file.

On January 3, 1979, Judge Fuller wrote back to Ms. King advising her that the referenced number was not consistent with his court's numbering system, that his court clerk had found only one case involving a Roberto Lopez, that it involved a negotiated plea on June 6, 1977, for credit card forgeries and resulted in a grant of five years' probation with a condition of restitution. It is, of course, clear that the individual to whom Judge Fuller referred was not real party because real party was in custody in California on June 6, 1977.

Also on December 27, 1978, Ms. King wrote to Louie Wainwright, Secretary of the Florida Department of Offender Rehabilitation, stating that real party had an unfinished Florida prison term that he wished to serve concurrently with his California sentence and inquiring as to Florida's intentions in the matter.[3] On January 10, 1979, a letter from the Florida Department of Offender Rehabilitation, signed by a Joye Bruce, assistant inmate records administrator, was sent to Ms. King stating that that department had no authority to allow the unfinished Florida sentence to run concurrently with his California sentence; that this came "under the purview of the court and the judge would have to so specify."

Apparently there was no further communication with the Florida Department of Offender Rehabilitation to determine whether the January 10 letter referred to the purview of the California court or the Florida court. Nor was there any further effort to communicate with Judge Fuller regarding real party's correct case number, the status of his sen-

---

[3] In this letter Ms. King stated that real party's Florida sentence was for a conviction involving a stolen motor vehicle. This further confirms that the individual to whom Judge Fuller referred was not real party.

tence, and whether the Florida court would object to or approve of his serving the remainder of the unfinished Florida sentence concurrently with the unfinished California sentence.

On May 31, 1979, real party sent a formal request to Ms. King "for consideration for transfer to concurrent service of my Florida term." On June 4, 1979, Ms. King again wrote to the Florida Department of Offender Rehabilitation, this time to a Charles Lawson, compact administrator. The letter advised that real party had requested transfer to Florida custody to serve concurrent Florida and California terms pursuant to *In re Stoliker* (1957) 49 Cal.2d 75 [315 P.2d 12]; that the request had been approved by the California Department of Corrections; and that real party was available for transfer. The letter referenced no Florida case or prison number and contained no information regarding the nature of the charges against real party, the status of his Florida sentence or the fact of his escape. Apparently Florida never replied to this letter.

On September 19, 1980, the California Court of Appeal for the Fifth Appellate District granted a petition for writ of habeas corpus in real party's favor[4] directing the California Department of Corrections to give no effect whatever to the May 17, 1977, fugitive warrant and not to treat it as a detainer against real party in processing his scheduled September 22, 1980, parole release. The Fifth District's order stated, however, that Florida could attempt to extradite petitioner and that the Department of Corrections was not precluded from acting on any valid extradition documents which Florida might obtain.

Real party was apparently released on parole as scheduled. The habeas corpus petition alleges that he was arrested by the Los Angeles County Sheriff's Department on October 27, 1980, and was being detained pursuant to a felony fugitive complaint filed October 28, 1980, and a Governor's warrant of extradition. A copy of the fugitive complaint is appended to the habeas corpus petition. It indicates that Florida had filed criminal charges of escape against real party on September 29, 1980, and that the Governor of Florida had issued an arrest warrant based on those charges. Real party did not append copies of the newly filed Florida charges, the Florida Governor's warrant, nor, as indicated above, the California Governor's warrant to the petition.

---

[4]Real party had at some earlier unspecified date unsuccessfully filed a similar petition in the San Luis Obispo Superior Court.

The habeas corpus petition sought relief on the following theories: That real party was no longer a fugitive under California or federal law; that California authorities had already done everything they were required to do to comply with the original Florida fugitive warrant and were therefore somehow absolved from complying with the demand for extradition; that Florida had waived its right to extradite by failing to take custody of real party when it previously was offered; and that extradition would violate the letter and spirit of California Penal Code sections 669 and 1389 and of the federal extradition statute, 18 United States Code section 3182.

In respondent court, the People characterized real party's contentions as seeking relief on a lack of speedy trial theory and argued that that issue exceeded the scope of review in a habeas corpus proceeding to challenge extradition. Real party argued that the thrust of his challenge was that he could no longer properly be considered a fugitive. While the facts relevant to either issue revolve around delay in returning real party to Florida, the distinction in legal theory is significant.

■ As the People correctly argue, in a habeas corpus proceeding challenging a grant of extradition, the only issues which a court may examine are: " . . . (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive . . . ." (*Michigan* v. *Doran, supra,* 439 U.S. 282, 289 [58 L.Ed.2d 521, 527]; *Pacileo* v. *Walker* (1980) 449 U.S. 86 [66 L.Ed.2d 304, 101 S.Ct. 1421].) Clearly real party's habeas corpus petition did not challenge extradition on the first three permissible grounds. It is equally clear, however, that real party did challenge his status as a fugitive and that the People mischaracterized real party's argument as one based upon his right to a speedy trial.

What is far less clear is the trial court's rationale in granting real party's petition. While grounding its decision on Florida's delay in attempting to return real party, the trial court did not explain whether it was acting on "speedy trial" grounds, whether it agreed with real party that he was no longer a fugitive, or whether it was acting on some other statutory or constitutional basis.[5] Because the legal—as opposed to the

---

[5]The trial court prefaced its ruling with the statement, "I may not know the laws of the State of Florida but I am about to make some." This is precisely the type of undertaking which *Pacileo* v. *Walker* (1980) 449 U.S. 86 [66 L.Ed.2d 304, 101 S.Ct. 1421] forbids.

factual—basis of the trial court's decision was unclear, and because we had grave doubts that real party had demonstrated that he was not a fugitive, we issued the alternative writ herein.

Real party asserts that he ceased being a fugitive when he sought a return to Florida during the pendency of his California prison sentence. ■ Applicable cases define a fugitive as one who, having committed a crime in one state, leaves it and is found in another. (*Appleyard v. Massachusetts* (1906) 203 U.S. 222 [51 L.Ed. 161, 27 S.Ct. 122]; *In re Thurber* (1918) 37 Cal.App. 571 [174 P. 112].) ■ Real party cites no pertinent authority for the novel proposition that a prison escapee who flees to another jurisdiction ceases to be a fugitive for purposes of extradition because, while incarcerated in the new jurisdiction, he makes an ineffectual offer to return to complete his original sentence.

Furthermore, even if real party could establish that his request for transfer to Florida to complete his preexisting Florida sentence terminated his fugitive status vis-à-vis that charge, it would still be no defense to the present extradition proceeding which is based not on the original sentence, but on the newly filed escape charges. Since those charges were not filed until September 29, 1980, and since real party has resisted all of Florida's efforts since then to return him, he clearly is and remains a fugitive for extradition purposes.

■ Real party also alleges that Florida waived jurisdiction over him by failing to take custody of him in response to Ms. King's June 4, 1979, letter. In discussing a waiver of jurisdiction in a slightly different context in *In re Patterson* (1966) 64 Cal.2d 357 [49 Cal.Rptr. 801, 411 P.2d 897], the Supreme Court held that such a waiver should be found only upon affirmative evidence that the waiver was intentional.[6] Real party cites no authority for the proposition that a waiver can be inferred from a state's silence after a defendant's request for transfer. It certainly cannot be inferred in the instant case where the evidence that Florida authorities received the June 4, 1979, letter is merely inferential and there is no evidence that the skimpy information contained therein was sufficient to enable them to identify real party and connect him to the

---

[6]In *Patterson* the defendant was attempting to compel California authorities to release him to Florida authorities so that he could gain the benefits of a concurrent California sentence by serving a portion of it in Florida. The question was whether the transfer would constitute a waiver by California authorities which would preclude their regaining custody upon the conclusion of the Florida sentence so that the defendant could then serve any remaining uncompleted portion of his California sentence. The court held that such a transfer would *not* constitute a waiver.

unfinished sentence in that state. And again, a waiver of jurisdiction as to the unfinished sentence would not, in any event, have divested Florida of jurisdiction on the subsequently filed escape charge.

Real party cites no authority for the proposition that the failure of the State of Florida to accord him the benefits of California Penal Code sections 669 and 1389 can defeat Florida's extradition rights. In the light of *Pacileo* v. *Walker, supra,* 449 U.S. 86, and *Michigan* v. *Doran, supra,* 439 U.S. 282, it is extremely doubtful that California could, constitutionally, erect such a barrier to Florida's exercise of its rights.

■ With respect to real party's rights under Penal Code section 669,[7] *In re Patterson, supra,* 64 Cal.2d 357; *In re Satterfield* (1966) 64 Cal.2d 419 [50 Cal.Rptr. 284, 412 P.2d 540]; and *In re Cain* (1966) 243 Cal.App.2d 768 [52 Cal.Rptr. 860], all agree that a convict serving time in California, who has an unfinished sentence in another jurisdiction, and who is entitled, under California law, to serve his California sentence concurrently with the other sentence, can, by way of a habeas corpus petition, compel California authorities to release him to the authorities of the other jurisdiction when the other jurisdiction will not credit him for time served in California. But each of the cited cases tacitly, and *In re Tomlin* (1966) 241 Cal.App.2d 668 [50 Cal.Rptr. 805], expressly, recognizes that California cannot compel the other jurisdiction to take custody of the inmate during the pendency of his California sentence. In each of the cited cases a writ of habeas corpus issued against California authorities. But each case stated that if the other jurisdiction failed to take custody during the pendency of the defendant's California sentence, the writ would be deemed fully executed. In other words, the defendant's rights under California law would be deemed exhausted. There is no implication that the extradition rights of the other jurisdiction would be affected in any way.

With respect to any rights he might have under Penal Code section 1389, real party is on even shakier ground. Section 1389, under certain conditions, requires transfer of a California prison inmate to another state for the purpose of allowing trial in the second state of any "untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner...." (Pen. Code, § 1389,

---

[7]No showing is made as to the precise sentence imposed on real party in California. The parties assume, and therefore so do we, that the California judgment was silent as to the prior Florida sentence and that therefore under California law real party was entitled to serve the California sentence concurrently with the unfinished prior Florida sentence.

art. III, subd. (a).) Assuming the June 16, 1978, "Inmates Notice of Imprisonment and Request for Disposition of Indictment, Information on [*sic*] Complaint," to which real party's petition referred, was an effort to invoke the provisions of Penal Code section 1389, it could not have been effective because there was then no untried indictment, information or complaint pending in Florida.[8]

Even if Florida had already instituted the escape charges against real party, section 1389 would only have affected his right to have those charges tried during his California sentence. It would have conferred no right upon him to remain in Florida upon conviction of those charges or to serve his new Florida sentence concurrently with his preexisting California sentence. Nor would real party have acquired any rights to a concurrent sentence under Penal Code section 669, for as to any sentence on the escape charges, Florida's judgment, not California's, would have been the second sentence.

■ Real party's contention that his rights under 18 United States Code section 3182 were violated are not well-founded either. Section 3182 provides for the arrest of fugitives and further provides that if no agent of the demanding state appears in the asylum state within 30 days from the date of the fugitive's arrest, the prisoner *may* be discharged. The 30-day provision of section 3182 has been held to be permissive, not mandatory. (*Application of Dunster* (1974) 131 N.J. Super. 222 [328 A.2d 238]; *Prettyman* v. *Karnopp* (1974) 192 Neb. 451 [222 N.W.2d 362].)[9] Furthermore, it applies only to an arrest based upon the extradition warrant issued by the Governor of the asylum state. (*Application of Dunster, supra, Prettyman* v. *Karnopp,*

---

[8]Since real party did not include a copy of the June 16, 1978, "Inmate's Notice" in his petition, we do not know whether it complied with the other requirements of Penal Code section 1389, art. III, subd. (a), to wit, whether it was addressed to both the appropriate prosecutor and court in Florida, or whether it was accompanied by a certificate of his California custodial official detailing the terms of his California commitment, the time remaining on his sentence, the behavior credits he had earned and relevant parole data.

[9]*Hill* v. *Roberts* (Fla.App. 1978) 359 So.2d 911, relied on by real party, incorrectly states that *Prettyman* v. *Karnopp,* 222 N.W.2d 362, construed the term "may" to be mandatory. Furthermore, the facts in *Hill* are totally inapposite. There the fugitive was arrested in Florida on a North Carolina fugitive warrant in August 1972. A Florida Governor's warrant issued in September or October 1972. The fugitive—who was not otherwise subject to incarceration in Florida—unsuccessfully challenged the extradition proceedings via a habeas corpus petition which was finally denied in December 1973. North Carolina thereafter did nothing to obtain custody of him. In May 1974 he was released on bail. Finally, in July 1976 he commenced habeas corpus proceedings, first in federal and then in state court, to have the extradition quashed. Ultimately it was.

*supra.*) That arrest of real party did not take place until October 27, 1980. The 30-day period has been tolled since November 12, 1980, during the time real party has challenged extradition. (*Application of Dunster, supra*; *Prettyman* v. *Karnopp, supra.*) Section 3182 provided no basis for his release via habeas corpus.

■ California's offer to release real party to Florida authorities on June 4, 1979, does not provide a basis for defeating Florida's present right to extradite. Whether real party's ineffectual effort to return to Florida should entitle him to credit against his unfinished Florida sentence for time served in California or whether Florida's failure to file the escape charges at an earlier date deprived real party of his right to a speedy trial, are issues which must be adjudicated in the courts of Florida. Respondent court exceeded its jurisdiction in concluding that those delays terminated Florida's jurisdiction over real party and defeated its right to extradite.

Let a peremptory writ of mandate issue directing respondent court to vacate its order of December 5, 1980, quashing the Florida demand and California Governor's warrant and to enter a new and different order denying real party's petition for writ of habeas corpus.

Kaus, J.,* and Hastings, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied July 14, 1982.

---

*Assigned by the Chairperson of Judicial Council.