(691 P.2d 405)

No. 56,631

LILBURN BRECKENRIDGE, *Appellant,* v. EARL HINDMAN, *Appellee.*

Opinion filed December 6, 1984.

*Charles D. Sauer,* of Overland Park, and *Tim J. Larson,* of Hannen and Larson Law Offices, of Burlington, for the appellant.

*C. William Ossmann,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before PARKS, P.J., BRISCOE, J., and JEROME HARMAN, Chief Judge Retired, assigned.

HARMAN, C.J. Retired: This is an appeal from an order denying a petition for writ of habeas corpus in an extradition proceeding.

Appellant Lilburn Breckenridge was arrested on June 2, 1983, in California and held on fugitive warrants stemming from a

murder complaint filed in Coffey County, Kansas, in May 1978. After extradition to Kansas, the murder charges in Kansas were dropped when a fugitive complaint was filed by Oklahoma on the same murder charges. At the end of ninety days, Oklahoma had made no request for extradition upon the governor of Kansas and Breckenridge was released pursuant to K.S.A. 22-2717.

Subsequently, a governor's warrant was issued and Breckenridge submitted himself to the Shawnee County authorities for arrest on December 6, 1983. That day, he was brought before the district court, informed of the charges of the State of Oklahoma pursuant to K.S.A. 22-2710 and given ten days in which to file a petition for writ of habeas corpus. Additionally, on December 6, the Shawnee County sheriff's office dispatched a teletype to notify Tulsa County, Oklahoma, authorities of the apprehension.

According to the testimony of Gene Olander, Shawnee County district attorney, prior to Breckenridge's surrender on the governor's warrant, his attorney, Charles Sauer, approached the D.A.'s office and indicated his desire to surrender the appellant specifically to Shawnee County. The D.A. and Sauer agreed that Breckenridge would be surrendered to Shawnee County and that the D.A. would check out two evidentiary matters for Sauer, then Breckenridge would voluntarily return to Oklahoma.

Appellant filed no action within the ten days granted him by the court to file his petition for habeas corpus. Fifty-five days passed without any request or demand by an agent of the State of Oklahoma. Officer Burghart, in charge of fugitive warrants for the Shawnee County sheriff's department, testified that as a general practice he would send the authorities of the demanding state a second teletype advising them that the subject was available for release to them, and that in his 12 years in the fugitive unit no officer from another state has ever arrived to transport a fugitive prior to this second communication. He further testified that a second teletype had not been sent because Gene Olander had advised him in three separate conversations that Breckenridge would not be available to be released until he received the information he had agreed to give Sauer.

Appellant filed a petition for writ of habeas corpus January 30, 1984, contending his restraint was illegal under 18 U.S.C. § 3182 (1982). The State failed to file an answer to the petition and at trial asserted that the facts alleged in the petition were not in

dispute but that there were questions open as to whether 18 U.S.C. § 3182 required the release of the petitioner.

The court heard evidence and found that Breckenridge had been held in Kansas for more than 30 days as an accommodation to his counsel, and that release under 18 U.S.C. § 3182 was not mandatory and he was not released. Breckenridge appeals from this decision.

Proceedings for the interstate extradition of prisoners are controlled by the federal Constitution and federal law. *Sanders v. Conine,* 506 F.2d 530, 532 (10th Cir. 1974); *Hill v. Roberts,* 359 So. 2d 911, 912 (Fla. Dist. Ct. App. 1978); *People ex rel. Dimas v. Shimp,* 83 Ill. App. 3d 150, 403 N.E.2d 750 (1980); *Prettyman v. Karnopp,* 192 Neb. 451, 455, 222 N.W.2d 362 (1974). Section two of Article IV of the United States Constitution provides, in part:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

The controlling federal law in this case is 18 U.S.C. § 3182 which provides:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

The dispute in this case centers around an interpretation of the final sentence of that section which allows for discharge of the prisoner if an agent of the demanding state fails to appear to assume custody for the demanding jurisdiction.

Because of the nature of this appeal, the ordinary standards of review concerning habeas corpus actions in extradition are inappropriate. Generally a district court's review powers are limited:

"Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive. These are historic facts readily verifiable." *Michigan v. Doran,* 439 U.S. 282, 289, 58 L.Ed.2d 521, 99 S.Ct. 530 (1978).

See also *Pacileo v. Walker,* 446 U.S. 1307, 1309, 64 L.Ed.2d 221, 100 S.Ct. 1633 (1980), and *Gladney v. Sheriff of Leavenworth County,* 3 Kan. App. 2d 568, 570, 598 P.2d 559 (1979).

However, here the petitioner did not attack the validity of the extradition warrant, but instead challenges the procedural compliance with the federal law by the asylum and demanding states in extraditing him.

Extradition was intended to provide a summary and mandatory executive proceeding to facilitate the prompt return of a fugitive from justice upon a state's demand for him. *Pacileo,* 446 U.S. at 1309. "Since Federal legislation in the field is not comprehensive, States are free to establish ancillary proceedings consistent with the Federal scheme," but they "cannot impose more stringent standards or refuse a demand for extradition on the basis of requirements not articulated by Federal law." *Shimp,* 83 Ill. App: 3d at 154. Federal extradition statutes have not been construed narrowly and technically, but liberally, to effect their important purpose. *Biddinger v. Commissioner of Police,* 245 U.S. 128, 62 L.Ed. 193, 38 S.Ct. 41 (1917); *State v. Paskowski,* 647 S.W.2d 238 (Tenn. Crim. App. 1983).

Here, the trial court determined that the petitioner was held in Kansas for more than 30 days as an accommodation to his counsel and that release was therefore not mandatory under 18 U.S.C. § 3182. The petitioner argues that the court erred in making this finding in light of the following stipulation:

"It is stipulated that Mr. Sauer understood that if a writ was not filed by December 16th, his client would be returned to Oklahoma."

At the outset of the hearing, Sauer indicated that no evidentiary hearing was necessary; then he changed his mind but offered no testimony on behalf of appellant.

The district attorney testified that Sauer wanted his client to remain in the Shawnee County jail until such time as Sauer could do two things: talk to an FBI agent in California and learn the brand and caliber of shotgun shells used in the homicide

involved. He asked the district attorney to help him find the information and the latter reluctantly agreed to do so. He did take steps through the KBI and did give some information to Sauer but was never able to satisfy him. Sauer would always insist there was more. Apparently the California FBI agent refused to talk to him. The D.A. was anxious to stop the expense of holding Breckenridge in jail, but also wanted to honor his agreement.

The matter of the stipulation arose only after an out-of-court consultation between counsel for both sides and after Sauer declined to take the stand. The stipulation does not in any wise nullify the clear-cut testimony of the D.A. which was sufficient to support the court's finding that Breckenridge was held in Kansas as an accommodation to his counsel.

The petitioner had clearly been held in Kansas for 55 days at the time this habeas action was filed. The federal statute clearly contemplates transportation of the fugitive to the demanding state within 30 days, but it is not clear that the statute *requires* discharge of a prisoner if the transportation does not occur within the thirty-day period. The statute itself provides that the prisoner *"may be* discharged." [Emphasis added.] Most courts have given a permissive interpretation to the word "may." *State v. Paskowski,* 647 S.W.2d at 240; *People v. Superior Court (Lopez),* 130 Cal. App. 3d 776, 786, 182 Cal. Rptr. 132 (1982); *Prettyman v. Karnopp,* 192 Neb. at 455-56; *In re Application of Dunster,* 131 N.J. Super. 22, 28, 328 A.2d 238 (1974); *McEwen v. State,* 224 So. 2d 206, 207 (Miss. 1969); *Foley v. State,* 32 N.J. Super. 154, 161, 108 A.2d 24 (1954).

The trial court did not err or abuse its discretion in finding that there was an agreement and that the release of Breckenridge was not mandatory. The State was not required to enter into the agreement but it did and it tried to honor the agreement. The thirty-day period was tolled by the agreement and release was not mandatory under § 3182.

The judgment is affirmed.