## In re Felicia LAMBERT

[795 A.2d 1236]

No. 02-001

March 21, 2002. Petitioner Felicia Lambert appeals from a superior court order denying a habeas corpus petition seeking to prevent her extradition to Massachusetts. She contends: (1) the documents accompanying the extradition request did not comply with statutory requirements; and (2) her detention was in violation of federal law. We affirm.

On April 5, 2001, following a jury trial in the Chittenden District Court, petitioner was convicted of certain misdemeanor charges. She was released on bail pending sentencing. Several days later, she was arrested on fugitive-from-justice charges, arraigned and released on conditions. On May 10, the Acting Governor of Massachusetts filed a request for extradition with the Governor of Vermont, stating that petitioner had violated the terms of her probation stemming from a felony larceny conviction in Massachusetts. The Governor of Vermont issued a warrant of extradition on May 30. Petitioner was arrested on the warrant on June 22, and held without bail.

On July 20, petitioner was sentenced on the Vermont misdemeanor convictions and began serving her sentence. On November 30, the district court granted a motion to stay execution of the sentence pending appeal. Petitioner remained incarcerated, however, on the Governor's warrant. One week later, on December 7, petitioner filed a petition for habeas corpus, claiming that the Massachusetts documents supporting the extradition request were deficient under 13 V.S.A. § 4943, and further asserting that her continued incarceration violated due process.

Under 13 V.S.A. chapter 159, Vermont's codification of the Uniform Criminal Extradition Act, a demand for extradition must be accompanied by one or more types of authenticated documents, including "a copy of a judgment of conviction or of a sentence imposed in execution thereof." *Id.* § 4943(a).[1] The extradition request in this case was accompanied by a number of supporting documents, including one entitled "Record of Criminal Case," a certified computer printout from the Massachusetts District Court.[2] Under the subheading "Offense and Judgment Information," the document identifies peti-

---

[1] The statute also requires "a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole," and authentication of the documents by the executive authority making the demand. 13 V.S.A. § 4943(a). No claim is made that the supporting documents were deficient in this regard.

[2] The other supporting documents included a signed statement by the Acting Governor of Massachusetts attesting to the fact that petitioner had been charged with a violation of probation in Massachusetts stemming from a larceny conviction and had fled from Massachusetts and taken refuge in Vermont; an affidavit signed by a clerk-magistrate of the Massachusetts trial court stating that petitioner had pled guilty to the crime of larceny over $250, was placed on probation until April 1994, and had violated probation resulting in an arrest warrant in 1990; a Massachusetts trial court document signed by petitioner setting forth the terms of her probation; a warrant issued in October 1990 ordering petitioner to appear on charges of probation violations; and various affidavits attesting to the authenticity of the documents presented.

tioner's offense as larceny over $250, indicates a judgment date of April 10, 1989, a sentence of two years and six months, with eighteen months to serve, and a probation starting date of April 10, 1989 and ending date of April 11, 1994. The document also states that a restitution fine of $22,103 was imposed, and notes that an arrest warrant on default was issued on November 27, 1990.

In her habeas petition, petitioner claimed that the Record of Criminal Case failed to satisfy § 4943(a)'s requirement of a "judgment of conviction." She relied principally on *In re Sousie*, 147 Vt. 330, 331, 516 A.2d 142, 143-44 (1986), in which this Court held that a Massachusetts request for extradition accompanied by a document entitled "warrant" failed to satisfy the statutory requirement. The warrant was essentially a mittimus, or transportation order, that was signed by a court clerk and that also indicated the petitioner had been convicted of a crime and the length of the sentence imposed. *Id.* at 331, 516 A. 2d at 143. *Sousie* relied, in turn, on a Florida Court of Appeals decision holding that extradition required at a minimum " 'the document representing the official court action of conviction.' " *Id.* (quoting *Britton v. State*, 447 So. 2d 458, 459 (Fla. Dist. Ct. App. 1984)). The trial court here distinguished *Sousie* on this basis, observing that the "Record of Criminal Case" had been signed by a "clerk-magistrate" who is authorized under Massachusetts law to perform certain judicial duties, and represented a "formal and regular document generated by the Massachusetts trial courts in the course of 'official court action.' " Accordingly, it found that the document satisfied the requirements of § 4943.

Petitioner on appeal renews her claim that the Massachusetts Record of Criminal Case was insufficient to support the extradition warrant. We are persuaded, however, that the trial court's ruling was essentially sound. Our conclusion is

informed by certain fundamental principles underlying the concept of interstate extradition. Originating in the Extradition Clause of Article IV, § 2, cl. 2, of the United States Constitution,[3] the United States Supreme Court has explained that the framers' purpose was "to preclude any state from becoming a sanctuary for fugitives from justice of another state and thus 'balkanize' the administration of criminal justice among the several states. It articulated, in mandatory language, the concepts of comity and full faith and credit . . . ." *Michigan v. Doran*, 439 U.S. 282, 287-88 (1978). Interstate extradition was thus "intended to be a summary and mandatory executive proceeding." *Id.* at 288; see also *In re Everett*, 139 Vt. 317, 319, 427 A.2d 349, 350 (1981) (citing *Doran*, 439 U.S. at 288).

The constitutional provision has been implemented through federal statute, see 18 U.S.C. § 3182, as well as through individual state extradition acts, most of which — like our own — are modeled on the Uniform Criminal Extradition Act. See 11 Uniform Laws Annotated 97 (1995); see *Lovejoy v. State*, 148 Vt. 239, 243-45, 531 A.2d 921, 924-25 (1987); see generally L. Abramson, *Extradition in America: Of Uniform Acts and Governmental Discretion*, 33 Baylor L. Rev. 793, 794 (1981) (discussing history of interstate extradition). In applying these provisions, however, the high Court has counseled that "the courts of an asylum state are bound by Art. IV, § 2," and that once the governor of the asylum state has granted extradition, a court considering

---

[3] This section provides: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

release on habeas corpus can do no more than determine whether certain facial prerequisites have been satisfied, including "whether the extradition documents on their face are in order." *Doran*, 439 U.S. at 288-89. In an early decision addressing the sufficiency of an affidavit to support extradition, the Supreme Court cautioned against unduly technical judicial interpretations of these procedural requirements.

> When it appears, as it does here, that the affidavit in question was regarded by the executive authority of the respective States concerned as a sufficient basis, in law, for their acting — the one in making a requisition, the other in issuing a warrant for the arrest of the alleged fugitive — the judiciary should not interfere, on *habeas corpus*, and discharge the accused, upon technical grounds, and unless it be clear that what was done was in plain contravention of law.

*Compton v. Alabama*, 214 U.S. 1, 8 (1909).

In a seminal California case, Justice Traynor similarly counseled that courts evaluating the sufficiency of the demanding state's extradition papers were not to "exalt form over substance." *In re Cooper*, 349 P.2d 956, 959 (Cal. 1960). Consistent with this approach, constitutional and statutory provisions applicable to extradition have been liberally construed in favor of the demanding state. See *Biddinger v. Commissioner*, 245 U.S. 128, 133 (1917) (extradition laws "have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose").

Viewed in light of these principles, the document submitted by the Massachusetts authorities must be deemed sufficient for extradition purposes. Unlike our own Rules of Criminal Procedure, which

specifically reference a "judgment of conviction," define its contents, and specify that it "shall be signed by the judge," V.R.Cr.P. 32(b), the Massachusetts Rules of Criminal Procedure provide, with respect to criminal judgments, merely that the verdict or finding "shall be rendered, in open court, and shall be entered on the court's docket." Mass. R. Cr. P. 28(a). Massachusetts does not, therefore, appear to require a judgment of conviction signed by a judicial officer, but merely a docket entry based upon the verdict. Nevertheless, the computer-generated entries itemized in the "Record of Criminal Case" submitted by the Massachusetts authorities contain all of the essential information that one would normally seek in a judgment of conviction, and more: it sets forth the judgment of guilt and date of conviction; the nature of the offense; the sentence imposed, including the imposition of probation with beginning and ending dates, and the imposition of a restitution fine, including the amount paid and balance due; and other later docket entries. Thus, for purposes of establishing the bona fides of Massachusetts' extradition request, the document was tantamount to a judgment of conviction.

Confronted with similar circumstances, we note that other courts have uniformly recognized judgment-of-conviction "equivalents." In *State v. Luster*, 596 So. 2d 454, 455-56 (Fla. 1992), for example, the Florida Supreme Court concluded that an "abstract of judgment" certified by the clerk of the California court in which the petitioner had been convicted satisfied Florida's statutory requirement of a "judgment of conviction" for extradition purposes. The Florida court noted that "California treats the clerk's abstract of judgment as though it were an equivalent of Florida's written order of judgment," and reasoned that failure to accord it equal status "would be a clear violation of the spirit and letter of the Full Faith and Credit Clause, the Supremacy Clause,

and the Extradition Clause of the federal Constitution." *Id.* at 456. It is interesting to note that in so holding, the Florida Supreme Court reversed a lower court ruling which had relied on *Britton v. State*, 447 So. 2d 458 (Fla. Dist. Ct. App. 1984), the principal authority cited in *Sousie*. See *Lawrence v. Luster*, 575 So. 2d 220, 221 (Fla. Dist. Ct. App. 1991). Indeed, the dissenting justice on the lower court, whose views ultimately prevailed, had argued that *Britton* was "incorrectly decided," and that its "attempt at technical exactitude defeats the summary nature of extradition proceedings." *Id.* at 222 (Ferguson, J., dissenting).

Other cases are in accord with the Florida decision. See, e.g., *Smedley v. Holt*, 541 P.2d 17, 19-20 (Alaska 1975) (since California did not require signed judgment of conviction but merely oral pronouncement carried into clerk's minutes, Alaska would honor extradition request despite absence of signed judgment of conviction); *Butcher v. Caldwell*, 677 P.2d 342, 344 (Colo. 1984) (certified copy of clerk's minutes indicating that guilty plea was entered and accepted by trial court in Minnesota was sufficient documentation of "conviction" under Colorado extradition statute); *State v. Snider*, 465 P.2d 739, 740 (Or. Ct. App. 1970) (California "abstract of judgment" satisfied Oregon's requirement of "judgment of conviction" for purpose of extradition).

Thus, the overwhelming weight of authority supports the principle of affording full faith and credit to extradition requests supported by documentation that can fairly be construed as equivalent to a judgment of conviction under the law of the requesting state. Whatever its merits on the particular facts before it, therefore, *Sousie* is not controlling here. The supporting documents submitted by the Acting Governor of Massachusetts were sufficient for extradition purposes.

Petitioner's other arguments in this regard are unpersuasive and require no extended discussion. In addition to *Sousie*, petitioner relies on *Deyo v. Snelling*, 139 Vt. 341, 428 A.2d 1117 (1981), and in particular our observation there that in extradition matters "[n]o substitutes are allowed." *Id.* at 343, 428 A.2d at 1119. In *Deyo*, however, the question was whether a defendant's "waiver of his right to a preliminary hearing" could substitute for the statutory requirement of an "affidavit to the facts [of the crime]." *Id.* Here we are not confronted with such a patent effort to "substitute" dissimilar documents, but rather with a question of equating two functionally equivalent documents from different states. Petitioner also asserts that the Record of Criminal Case is inadequate as a computer-generated summary rather than the "actual" document of court action. As noted, however, a docket entry of judgment is all that Massachusetts appears to require, and it is well settled that certified computer printouts of public records showing prior convictions are admissible as the self-authenticating equivalent of the document itself. See, e.g., *United States v. Smith*, 973 F.2d 603, 605 (8th Cir. 1992); *Snavely v. City of Huntsville*, 785 So. 2d 1162, 1168 (Ala. Ct. Crim. App. 2000); *State v. Sterling*, 535 S.E.2d 329, 330 (Ga. Ct. App. 2000); *Pierce v. State*, 737 N.E.2d 1211, 1213 (Ind. Ct. App. 2000); *State v. Ellis*, 504 S.E.2d 787, 788 (N.C. Ct. App. 1998); *McDonald v. State*, 846 P.2d 694, 697 (Wyo. 1993). Finally, petitioner expresses "concern" about an entry in the Massachusetts document showing an "amended judgment or sentence" entered on July 13, 1999. Petitioner did not raise this issue below and therefore failed to preserve it for appeal. See *State v. Jones*, 160 Vt. 440, 448, 631 A.2d 840, 846 (1993). Although a timely objection might have allowed the State to address the meaning of this entry, we are not persuaded that it un-dermines the document's basic reliability as proof of defendant's underlying judgment of conviction.

Petitioner also claims on appeal that her continued incarceration violates federal law requiring her discharge if she is not delivered to Massachusetts within thirty days of her arrest on the extradition warrant. See 18 U.S.C. § 3182 (requiring asylum state to deliver person detained on extradition warrant to agent of requesting state and further providing that "[i]f no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged"). This issue was not raised before the trial court, and therefore was not preserved for review on appeal. See *Jones*, 160 Vt. at 448, 631 A.2d at 846. Nor has petitioner asserted plain error in this regard. Accordingly, we need not address the issue. See *State v. White*, 172 Vt. 493, 499, 782 A.2d 1187, 1192 (2001) (where defendant failed to raise issue below or claim plain error on appeal, Court would not address it). We note, however, that the vast majority of courts that have considered the question have concluded that the thirty-day provision in the federal statute is permissive, not mandatory. See, e.g., *Long v. Cauthron*, 731 S.W.2d 792, 794 (Ark. Ct. App. 1987) ("The thirty-day provision in the federal statute does no more than release the asylum state from its constitutional obligation to hold the prisoner if the demanding state does not appear within thirty days. Nothing in it prohibits a state from holding him for a reasonable time thereafter."); *Breckenridge v. Hindman*, 691 P.2d 405, 408 (Kan. Ct. App. 1984) ("Most courts have given a permissive interpretation to the word 'may' [in § 3182]."); *Godsey v. Houston*, 584 So. 2d 389, 391 (Miss. 1991) ("18 U.S.C.A. § 3182 does not mandate discharge if the agent of the demanding state fails to appear within thirty days"); *Prettyman v. Karnopp*, 222 N.W.2d 362, 365 (Neb. 1974) ("The language appear-

ing in said section: 'If no such agent appears within thirty days from the time of the arrest, the prisoner *may* be discharged' is clearly permissive, not mandatory."); *State v. Paskowski*, 647 S.W.2d 238, 240 (Tenn. Ct. Crim. App. 1983) ("we cannot attribute a mandatory meaning to that portion of 18 U.S.C.A. § 3182 in question").

At oral argument, petitioner also renewed her habeas claim that her continued incarceration violated due process. The contention is unpersuasive. Although incarcerated on June 22, 2001, on the extradition warrant, she also began serving her sentence on the Vermont convictions on July 20, and remained incarcerated on those counts until the sentence was stayed in late November. Where the subject of an extradition warrant has been charged or convicted under the laws of this state, our statutory scheme expressly authorizes the state to hold that person until the sentence has been served. See 13 V.S.A. § 4959. Moreover, even if we assumed that petitioner's incarceration during this period was attributable to the extradition warrant, we note that she did not file a habeas petition until December 7, which was denied on December 20. Accordingly, we discern no basis to conclude that her continued incarceration was unreasonable.

*Affirmed.*